(77 App. Div. 396.)

### PEOPLE v. MARTIN et al.

(Supreme Court, Appellate Division, First Department.   December 19, 1902.)

**1. PERJURY—INDICTMENT—ALLEGATIONS—STATUTES.**

Pen. Code, § 96, enacts that one who swears that any affidavit by him subscribed is true, when an oath is required by law or may lawfully be administered, and who willfully and knowingly deposes falsely, or states any material matter to be true which he knows to be false, is guilty of perjury. Executive Law, § 85, provides that a notary public has authority to exercise such powers and duties as by law may be performed by notaries, and he is authorized to take affidavits. Pen. Code, § 11, requires that its provisions be construed so as to promote justice. An indictment for perjury alleged that defendant was president of a corporation of Delaware, the laws of which state required him to make an affidavit as to whether the stock had been paid for in cash or otherwise, and that he made in New York, before a notary, an affidavit as to the stock which was false, and which was filed in the office of the secretary of state of Delaware. *Held*, that the allegations as to the filing of the affidavit sufficiently showed that the making of the same in the state of New York was sufficient, under the laws of Delaware.

**2. SAME—AFFIDAVIT—FOREIGN LAW.**

The making in New York state, before a notary, of an affidavit required by the laws of another state, is perjury, within Pen. Code, § 96, if the affidavit be false.

**3. INDICTMENT—SUFFICIENCY—DUPLICITY.**

Pen. Code, § 29, provides that a person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids and abets in its commission, whether present or absent, is a principal. *Held*, that where an indictment for perjury avers the offense against two persons, and then avers that one of them was actually present, aiding and procuring the acts and false oaths of the other, the indictment is not bad, as charging two distinct crimes, since both parties are principals.

Appeal from special term, New York county.

Robert L. Martin and another were prosecuted for perjury. From an order allowing a demurrer to the indictment, the people appeal. Reversed.

The indictment is as follows:

"Court of General Sessions of the Peace, in and for the County of New York.

"The People of the State vs. Robert L. Martin and Harry Velthusen.

"The grand jury of the county of New York, by this indictment, accuse Robert L. Martin and Harry Velthusen of the crime of perjury, committed as follows: Heretofore, to wit, on the 15th day of May, in the year of our Lord one thousand nine hundred and one, the said Robert L. Martin and the said Harry Velthusen, each late of the borough of Manhattan, of the city of New York, in the county of New York, aforesaid, were respectively, the said Robert L. Martin, president, and Harry Velthusen, secretary, of the Delaware Surety Company, a corporation duly organized and existing under the laws of the state of Delaware. And then and there, on the day and

year aforesaid, it was required by law, and by the general corporation law of the state of Delaware, that the president, with the secretary or treasurer, of every corporation organized and existing under the law of the said state of Delaware, should, upon payment of the capital stock of such corporation, make a certificate stating whether the same had been paid in in cash, or by the purchase of property, and stating also the total amount of capital stock paid in, which certificate should be signed and sworn, or affirmed to, by the president and secretary, or treasurer, and further providing that the same said certificate, so signed and sworn, or affirmed to, should be filed in the office of the secretary of state of the said state of Delaware. And then and there, and on the said 15th day of May in the year aforesaid, one Thomas Adam, Jr., was a notary public, duly appointed, sworn, and qualified, in and for the county of New York, aforesaid, and thereby duly authorized and empowered to administer oaths and take affidavits. And then and there, and on the said 15th day of May in the year aforesaid, at the borough and county aforesaid, the said Robert L. Martin, as president, as aforesaid, of the said corporation, as aforesaid, and Harry Velthusen, as secretary of the said corporation aforesaid, appeared before the said Thomas Adam, Jr., notary public as aforesaid, and did then and there, each in his own proper handwriting, duly subscribed, the said Robert L. Martin as president, and the said Harry Velthusen as secretary, the certain certificate, so as aforesaid required and provided for by law, and by the said general corporation law of the said state of Delaware, which said certificate was then and there as follows, to wit:

" 'We, Robert L. Martin, president, and Harry Velthusen, secretary, of the Delaware Surety Company, a corporation created by and under the laws of the state of Delaware, do hereby certify that the entire capital stock of the Delaware Surety Company, said corporation, of one million dollars, has been paid in in cash.

" 'New York, May 15th, 1901.

                                      " 'Delaware Surety Company;
                                      " 'By Robert L. Martin, President.
" 'Harry Velthusen, Secretary.
" 'Delaware Surety Company. Incorporated, 1901.
" '[Ten-cent revenue stamp canceled.]'

"And did then and there produce, present, and exhibit the same said written instrument and certificate as aforesaid to the said Thomas Adam, Jr., notary public as aforesaid, and he, the said Robert L. Martin, and he, the said Harry Velthusen, did then and there, at the borough and county aforesaid, on the said 15th day of May in the year aforesaid, produce, present, and exhibit to the said Thomas Adam, Jr., notary public as aforesaid, a certain affidavit in writing, duly signed and subscribed by him, the said Robert L. Martin, in his own proper handwriting, touching the truth of the said certificate aforesaid, so subscribed by them, the said Robert L. Martin and the said Harry Velthusen, as aforesaid, which said affidavit in writing was then and there as follows, to wit:

" 'State of New York, County of New York—ss.: Robert L. Martin and Harry Velthusen, being severally duly sworn, depose and say, each for himself, that they have read the foregoing certificate, and know the contents thereof, and that the same is true, to their own knowledge.

                                      " 'Robert L. Martin.
                                      " 'Harry Velthusen.
" 'Sworn to before me this 15th day of May, 1901.
                                      " 'Thomas Adam, Jr.,
" '[Notarial Seal.]                   Notary Public, N. Y. Co.'

"And it was then and there, and on the said 15th day of May, in the year aforesaid, required and provided for by law, and by the said general corporation law of the said state of Delaware, that the said certificate, so made, signed, and subscribed by the said Robert L. Martin as president, and the said Harry Velthusen as such secretary, as aforesaid, should be sworn or affirmed to by each of them before the same should be filed in

the office of the secretary of state of the said state of Delaware. And thereupon, and at the time and place aforesaid, and on the day aforesaid, before Thomas Adam, Jr., such notary public as aforesaid, at the borough and county aforesaid, the said Robert L. Martin was duly sworn, and did take his corporate oath by and before the said Thomas Adam, Jr., such notary public aforesaid, touching the truth of the matters contained in the said affidavits so as aforesaid in writing, and subscribed by him, the said Robert L. Martin, the said Thomas Adam, Jr.; such notary public having full and competent authority and power to administer such oath to them, and each of them, in that behalf. And the said Robert L. Martin, being so sworn as aforesaid, upon his corporal oath aforesaid, did then and there, and by the said affidavit in writing so signed and subscribed by him as aforesaid, falsely, corruptly, and knowingly swear and depose that each and every matter therein stated was true, to his own knowledge. And thereupon, and on the day and in the year aforesaid, at the borough and county aforesaid, the said Robert L. Martin did deliver the said certificate and the said affidavit,· so as aforesaid signed, subscribed, and sworn to by him, the said Robert L. Martin, to another, with intent that it should be uttered and published as true, and that the said certificate and affidavit were thereafter filed in the office of the secretary of state of the said state of Delaware; the said affidavit having been signed and sworned to by the said Harry Velthusen, the said secretary of the said corporation, who had theretofore, as aforesaid, subscribed the said certificate. Whereas, in truth and in fact, there was not then and there, and there had not been, paid in, in cash, one million dollars, as in and for payment of the capital stock of the said Delaware Surety Company, the said corporation, as aforesaid, as they, the said Robert L. Martin and the said Harry Velthusen, and each of them, then and there well knew. And whereas, in truth and in fact, the said Robert L. Martin did not then and there know that there was or had been paid in, in cash, one million dollars, as in and for payment of the capital stock of the said Delaware Surety Company, the said corporation as aforesaid, as they, the said Robert L. Martin and Harry Velthusen, then and there well knew. And the said Harry Velthusen then and there, and at all the times aforesaid, at the said borough and county aforesaid, and on the day aforesaid, was actually present, aiding, counseling, advising, and procuring the said acts, oaths, and willful perjury as aforesaid on the part of the said Robert L. Martin. And so the grand jury aforesaid do say that the said Robert L. Martin and the said Harry Velthusen, in the manner and form aforesaid, and by the means aforesaid, did willfully, feloniously, corruptly, knowingly, and falsely commit the crime of willful and corrupt perjury, against the form of the statute in such case made and provided, and against the peace of the people of the state of New York, and their dignity."

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Howard S. Gans, for the People.
Franklin Bien, for respondents.

HATCH, J. It appears by the record upon this appeal that the learned recorder made disposition of the question presented by the demurrer, based upon the conclusion that the crime of perjury, as defined in section 96 of the Penal Code, had not been committed. The reasoning which led to his conclusion in this respect seems to have been that the oath to the certificate, averred to have been taken in the indictment, was not required by any law of the state of New York, and did not, therefore, fall within the language or meaning of the statute, and that, not being in pursuance of or authorized by the laws of this state, the oath thereto was not lawfully administered, and consequently the crime of perjury could not be predicated thereon.

Eliminating those provisions of section 96 of the Penal Code which have no applicability to the offense as it is averred to have been committed in the indictment, the law defining perjury reads:

"A person who swears that any affidavit by him subscribed is true on any occasion on which an oath is required by law or may lawfully be administered, and who on such occasion willfully and knowingly deposes falsely in any material matter, or states in his affidavit any material matter to be true which he knows to be false, is guilty of perjury."

It is averred in the indictment that, by the general corporation laws of the state of Delaware, it was required by law that the president, with the secretary, or treasurer, of every corporation organized and existing under the laws of such state, should, upon 'payment of the capital stock of the corporation, make a certificate stating whether the same had been paid in in cash, or by purchase of property, and stating also the amount of the capital stock paid in, which certificate should be signed and sworn, or affirmed to, by the president and secretary, or treasurer, and, after being so signed and sworn to, should be filed in the office of the secretary of state of the state of Delaware. By further averments it is made to appear that this certificate was in conformity to the law of such state, and that after having been so taken, as averred in the indictment, it was filed in the office of the secretary of state of the state of Delaware. It is evident, therefore, that these averments of the indictment are sufficient to show that the oath was required by the law of Delaware, and if such certificate, by the laws of that state, was authorized to be verified and sworn to in the jurisdiction of a sister state, and could be filed with the secretary of state, when so taken, with the same force and effect as though taken in the state of Delaware, then it would clearly appear that such an oath might be lawfully administered within this state. While it is not averred in terms in the indictment that such an oath is authorized by the laws of the state of Delaware to be taken in a foreign jurisdiction, and, when properly authenticated, filed therein with the same force and effect as though taken within the jurisdiction of that state, yet it is averred that an oath of this character was required; that it was taken, and subsequently filed with the officer, as authorized by law. The fair inference which arises from the averments of the indictment in this respect is that, as the certificate was received and filed in the state of Delaware, it was therefore effectual to accomplish the purpose for which it was taken and filed, as it will not be presumed that it would be received and filed in such office unless it was legally sufficient to accomplish the purpose which the filing required. By section 85 of the executive law it is provided that a notary public has authority to exercise such powers and duties as by the laws of nations, and according to commercial usage, or by the laws of any other government, state, or country, may be performed by notaries. And by subdivision 2 such notary is authorized to administer oaths, affirmations, and take affidavits. It is therefore evident that the notary was authorized to take the affidavit attached to the certificate in question, as it presented an application to him to act in his official capacity, and the oath required to be taken was such as he might lawfully administer. It was the contention below,

and is urged by the respondents on this appeal, that section 96 of the Penal Code must be construed as authorizing only the taking of an affidavit where such affidavit was required by the laws of this state, and, if not so required, perjury could not be predicated thereon, even though it be conceded to be false. Such is not the language, however, of section 96, which we have heretofore quoted. Therein the provision is that the affidavit so subscribed and taken is true on any occasion in which an oath is required by law. If the provision of the statute stopped here, it might well be argued that it is limited in its operation to such affidavits and oaths as are required to be taken by the laws of this state, and could not be extended so as to cover an oath required to be taken for use in a foreign jurisdiction; but the definition does not stop here. Its further language is, "or may lawfully be administered." This language is in the disjunctive, and indicates clearly that two conditions are contemplated,—one where the oath is required by the laws of this state, and the other where it may lawfully be administered. To limit this language as applying only to an oath required by the law of this state is to render nugatory and of no effect the provision relating to those oaths which may be lawfully administered. It is evident that if the law of the state of Delaware authorized the taking of the affidavit averred in the indictment, within this jurisdiction, and, when so taken, force and effect was given to it in such state, then it would seem to follow that the oath attached to such affidavit might be lawfully administered within the jurisdiction of this state, as the exercise of such authority by the notary is authorized by the statute to which we have called attention. Therein he is authorized to administer oaths, affirmations, and take affidavits. The act upon the part of the notary, therefore, was a lawful act, and would seem to come fairly within the terms of the statute, and be an affidavit to which he might lawfully administer the oath. This brings the affidavit not only within the spirit of the enactment, but also within its literal language. Such language is to be construed as meaning something, and force and effect is required to be given to it. If it be held to mean only where the oath is required to be administered by the laws of the state, then such language was unnecessary and meaningless, as it was not needed to define such authority. The language theretofore used did that clearly, and, if that was all the whole clause meant, then the addition is surplusage, and adds nothing to the particular requirement. Its language, however, is broad enough in its terms to embrace the case presented by the affidavit averred in the indictment, and, if it can be so construed, it is evident that it ought to be. So to construe it does no violence to the provision, but, on the contrary, gives force and effect to all of the language used therein. The ordinary rule of construction requires this interpretation. Indeed, if it be strictly construed, such construction warrants the interpretation we have placed upon it. Black, Interp. Laws, 282, and cases cited.

By section 11 of the Penal Code the court is required to construe the provisions thereof according to the fair import of their terms, to promote justice and effect the objects of the law.

The present case seems to present every element authorizing a lib-

eral interpretation. The language of the Code seems to authorize it, and, in order to effectuate the objects of the law and promote justice, it seems to be required. If force and effect is to be given within the state of Delaware to the affidavit which the indictment presents,—and we think such is the fair construction,—then it follows that such corporation as is averred to exist in the indictment might become entitled to carry on business within this state when it has conformed to our laws. It may therefore come into this state with a certificate, the product of a false oath taken herein, that it has a capital stock of $1,000,000, paid into its treasury in cash, when in fact it has no such sum, and thereupon be held out by our laws to be responsible. It does not need argument to demonstrate that such a result would permit of the perpetration of the grossest frauds upon the citizens of this state. It would also follow that there could be no prosecution for the offense committed in the foreign jurisdiction unless the persons taking the oath went into such state and in person filed the affidavit, or unless they voluntarily went within the jurisdiction after it was filed. If they remained within this state, and procured the affidavit to be filed by sending it to the secretary, or otherwise, and did not at the time of filing go within the jurisdiction of the state, they could not be extradited from this state for such offense, although the affidavit was wholly false. People v. Hyatt, 172 N. Y. 176, 64 N. E. 825. If, under such circumstances, they could not be punished for the crime of perjury committed within this state, or at all, unless they voluntarily surrendered themselves to the foreign jurisdiction, they would receive immunity from punishment, although their act was an offense against the laws of the foreign jurisdiction, and worked mischievous results upon the citizens of this state. The courts ought not to be astute, under such circumstances, in unduly limiting the effect of penal provisions; and when a case is found which comes within the letter of the statute, under a reasonable interpretation, and entirely within its spirit, it should be upheld. Nor are we lacking in authority in support of the interpretation of which we think this statute susceptible. At common law, perjury was defined to be the taking "of a willful false oath by one who, being lawfully required to depose to the truth in any proceeding in a court of justice, swears absolutely in a matter of some consequence to the point in question, whether he believed it or not." 2 Archb. Cr. Prac. & Pl. (Pom. Notes) p. 1714. The statute of the state of Massachusetts codifies and adopts this definition. Pub. St. Mass. 1882, p. 1158. In Com. v. Smith, 11 Allen, 243, a case was presented where the defendant was charged with the crime of subornation of perjury, in procuring one Northrup to commit the crime of perjury, in giving false answers to certain questions propounded to him upon a commission issued out of the superior court of the city of New York in an action pending therein, which was at issue, to take testimony in the state of Massachusetts. For subornation of perjury committed in the execution of the commission, the defendant was indicted, tried, and convicted. Upon an appeal from the judgment of conviction, it was urged in his behalf, among other things, that the commissioner was not authorized by the law of Massachusetts to take such deposi-

tions. The general statute of Massachusetts provided that such a commission might be taken before a justice of the peace in the state, and it was held that, as the deposition was executed before a person authorized to administer oaths by the law of the state of Massachusetts, the crime of perjury could be committed, even though there was no law specially authorizing such an oath to be administered, when the testimony so given was to be used in a foreign jurisdiction. The oath taken in the execution of the commission was held to be taken in the course of justice, and, as a justice of the peace was authorized to administer the oath, the crime of perjury could be predicated thereon. The two cases, in principle, are precisely similar. In the indictment now before us, we have a case where the officer taking the affidavit was authorized by express law to take an affidavit. When so taken, it might be, and was, used in evidencing an act required by law to be evidenced in a foreign jurisdiction. If perjury could be predicated of the false oath given upon the execution of the deposition, so, in like manner, perjury can be predicated of the taking of the false affidavit, as both rest upon the same principle, and both were taken to evidence a fact in a foreign jurisdiction, required by the law of such foreign state. The same principle was decided adversely to the contention of the respondent in Stewart v. State, 22 Ohio St. 477. Those cases are decisive in principle of the interpretation which we have placed upon this statute.

The objection that the indictment is bad in charging in a single count two separate and distinct crimes is unavailing. The indictment avers the offense against both persons, and then avers that one of them was actually present, aiding, counseling, advising, and procuring the said acts, oaths, and willful purposes of the other. This does not constitute two offenses, but one, in which both are principals. Section 29, Pen. Code.

The only doubt which presents itself to our minds in the construction of the indictment lies in its failure to aver in terms that the law of the foreign state authorized the execution of the certificate and the affidavits, as is averred in the indictment, in a foreign jurisdiction. This difficulty we have already adverted to, reaching the conclusion that, as it was filed and apparently acted upon by the officer charged with receiving and filing it in the state of Delaware, it would authorize proof that it was so authorized by the laws of that state.

In sustaining a demurrer to an indictment, the judgment becomes a bar to another prosecution, unless by direction of the court the case be resubmitted to the same or another grand jury. Code Cr. Proc. § 327. The decision of the learned recorder proceeded upon the ground that the defect could not be cured, and therefore presumably failed to give a direction for its resubmission. We find no authority which precludes the public prosecutor from resubmitting the case to the same or another grand jury, except where the demurrer has been allowed; otherwise there is no objection, of which we are aware, which interposes to prevent the resubmission of the case to a grand jury at any time before the statute of limitations has run against the offense. If it be deemed desirable by the public prosecutor to eliminate this question from the indictment, if it be

susceptible of elimination, he may do in and about the matter as he is advised.

We conclude that this indictment is a good indictment, and states the offense of perjury committed against our laws. It follows, therefore, that the order allowing the demurrer, and the judgment based thereon, should be reversed, and the defendants directed to plead over to the indictment. All concur.