STATE *vs.* PATRICK FAHEY.

*Criminal  Law—Perjury ;  Subornation  of—What  Necessary  to Prove—Two  Witnesses not Necessary—Accomplice—Credit Given  to  His  Testimony  in  Cases  of  Felony—Cor- roboration  of—Testimony  of  Suborned  Wit- ness—Reasonable  Doubt.*

1.    At common law, perjury is committed when a lawful oath is administered in some judicial proceeding or due course of justice to a person who swears wiflully,abso- lutely and falsely in a matter material to the issue or point in question.    Where the crime is committed at the instigation or procurement of another, it is termed subordi- nation of perjury.

2. In order to convict of this crime the jury should be satisfied from the evidence (1), that the testimony of the witness claimed to have been suborned was false; (2), that it was given by him wilfully and corruptly, knowing it to be false; (3), that the defendant knew or believed that such testimony would be false; (4) and that the defendant also knew or believed that the witness claimed to have been suborned would wilfully and corruptly so testify; (5), that the defendant induced or procured the said witness to give such false testimony.

3. In proof of the crime of perjury it was formerly held that two witnesses were necessary, because otherwise there would be nothing more than the oath of one man against another, upon which the jury could not safely convict. But this strictness has long since been relaxed; the true principle of the rule being merely this, that the evidence must be something more than sufficient to counterbalance the oath of the prisoner, and the legal presumption of his innocence.

4. The degree of credit which ought to be given to the testimony of an accomplice is a matter exclusively within the province of the jury. It has sometimes been said that they ought not to believe him unless his testimony is corroborated by other evidence; and without doubt, great caution in weighing such testimony is dictated by prudence and good reason. But there is no such rule of law ; it being expressly conceded that the jury may, if they please, act upon the evidence of the accomplice without any confirmation of his statement. But on the other hand, judges in their discretion will advise a jury not to convict of felony upon the testimony of an accomplice alone and without corroboration, and it is now so generally the practice to give such advice, that its omission would be regarded as an omission of duty on the part of the Judge. It may be now regarded as the settled course of practice not to convict a prisoner in any case of felony upon the sole and uncorroborated testimony of an accomplice.

5. The same rules are applicable to the case of a witness who has perjured himself in a former trial ; and in cases of this character there should not be a conviction of a felony upon the uncorroborated testimony of such a witness.

6. Reasonable doubt defined.

*(September 30, 1902.)*

LORE, C. J., and SPRUANCE and BOYCE, J. J., sitting.

*Herbert H. Ward*, Attorney-General, and *Robert H. Richards*, Deputy Attorney-General, for the State.

*John Biggs* and *Samuel S. Adams, Jr.*, for the defendant.

Court of General Sessions, New Castle County, September Term, 1902.

INDICTMENT FOR SUBORNATION OF PERJURY.

The first count of the indictment was as follows:

" That at the November Term, A. D. 1901 of the Court of General Sessions of the State of Delaware, in and for the County of New Castle, holden at the City of Wilmington, in the County of New Castle and State of Delaware, before the Honorable Charles B. Lore, Chief Justice, and the Honorable William C. Spruance and Ignatius C. Grubb, Associate Judges of the said State, and sitting in said Court, the said Court then and there being in session, and the said Court having then and there authority to hear and determine divers felonies, misdemeanors and other offenses against the laws of the State of Delaware, a certain indictment was presented and returned in due course of law by the Grand Jury for the said County against one John Lynn, the said indictment being No. 49 to the November Term, A. D. 1901, aforesaid, of said Court, and the indictment charging the said John Lynn with obtaining by certain false pretenses in said indictment set forth certain money, to wit, the sum of fifty-six dollars lawful money of the United States of America, from one Horace G. Rettew, the said Horace G. Rettew being then and there the Receiver of Taxes and County Treasurer of the said County of New Castle, and that afterward the said John Lynn was duly and legally arraigned upon said indictment and pleaded to the same that he was not guilty thereof; upon which issue such proceedings were had that afterward, to wit, at the said November Term, A. D. 1901 of the said Court of General Sessions in and for the County aforesaid, so held, as aforesaid, a trial was had and held, before a jury duly drawn and empaneled, between the said State of Delaware and the said John Lynn upon the said indictment, upon which said trial evidence was given on behalf of said State of Delaware against the said John Lynn that the misdemeanor in said indictment specified and charged, to wit, the misdemeanor of obtaining money by false pretenses, was committed by the said John Lynn as in said indictment set forth, and

the jurors first aforesaid upon their oaths and affirmations respectively aforesaid do further present that Patrick Fahey, late of Wilmington Hundred, in the County of New Castle aforesaid, being a person of an evil and wicked mind and disposition and devising and intending as much as in him lay to prevert the due course of law and justice and to cause and procure the said John Lynn to be entirely acquitted of the said misdemeanor charged on him by the said indictment and to escape punishment for the same, did, before the said trial, to wit, on the first day of November in the year of our Lord one thousand nine hundred and one, at Wilmington Hundred aforesaid, then and there unlawfully, corruptly, wickedly, maliciously and feloniously, solicit, suborn, instigate and endeavor to persuade one Frederic Vansant to be and appear as a witness at the trial of the said issue, upon which issue the said State of Delaware was the plaintiff and the said John Lynn was the defendant, for and on behalf of the said John Lynn, the defendant in the said issue as aforesaid, and upon the said trial falsely to swear and give in evidence upon his corporal oath, taken upon the Holy Evangels of Almighty God, to and before the jurors which should be sworn to try the issue aforesaid, certain matters, material and relevant to the said issue and to the matters therein and thereby put in issue in substance and to the effect following, that is to say: That he, the said Frederic Vansant, upon some day in the month of October in the year of our Lord one thousand nine hundred, was at the house of the said John Lynn in Elsmere, in the County aforesaid, and while so at the house of the said John Lynn, on the said last mentioned day that he, the said Frederic Vansant, heard a certain conversation between the said John Lynn and a certain Lawrence M. Whiteman concerning the payment of the sum of fifty-six dollars in money by the said Lynn to the said Whiteman, and that he, the said Frederic Vansant, on the said last mentioned day, while so, as aforesaid, at the said house of the said Lynn, saw the said Lynn give to the said Whiteman certain money, and that he, the said Frederic Vansant, on the said last mentioned day, while so, as

aforesaid, at the said house of the said Lynn, as aforesaid, saw a certain Caleb Johnson present at the said house of the said Lynn, and standing near the said Lynn and the said Whiteman during the said above mentioned conversation."

The second count was similar to the above, with a slight variation in the phraseology.

At the May Term, 1902, Mr. Biggs, for defendant, moved to quash the indictment for the following reasons:

The defendant moves to quash the indictment on the ground that it does not set out any offense against the laws of the State of Delaware.

I.

The crime of subornation of perjury has several indispensable ingredients which must be charged in the indictment, or it will be fatally defective.

1.   The testimony of the witness suborned must be false.

2.   It must be given wilfully and corruptly by the witness, knowing it to be false.

3.   The suborner must know or believe that the testimony of the witness given, or about to be given, will be false.

4.   He must know or believe that the witness will wilfully and corruptly testify to facts which he knows to be false.

*U. S. vs. Dennee, 3 Woods, 41.*

Subornation of perjury is, in its essence, but a particular form of perjury itself.

*2 Bishop's Crim. Law, Sec. 1197.*

Both counts of the indictment charge the defendant, Patrick Fahey, with having suborned or procured Frederic Vansant to swear that he "Frederic Vansant, upon some day in the month of October," in the year 1900, was at John Lynn's house and heard a certain conversation.

It is charged, in both counts of the indictment, that Frederic Vansant swore at the trial of John Lynn "That he, the said Frederic Vansant, between the hours of four and five o'clock in the afternoon, upon some day between the tenth and twelfth days of October," heard the said conversation.

In order to constitute a good indictment for Subornation of Perjury, the defendant, Patrick Fahey, must be charged with having suborned or procured the witness, Frederic Vansant, to swear falsely to that which he did falsely swear to.

Same cases as under second objection.

## II.

Though a party who is charged with subornation of perjury knew that the testimony of a witness whom he called would be false, yet if he did not know that the witness would willfully testify to a fact knowing it to be false, he cannot be convicted of the crime charged.

*Com. vs. Douglass, 5 Metcalf, 241.*

Therefore both counts of the indictment are bad, because there is no averment in either that the defendant knew that the witness knew that the testimony he was instigated to give was false.

*U. S. vs. Dennee, 3 Woods C. C., 41; Com. vs. Douglass, 5 Metcalf, 241; Coyne vs. The People, 124 Ill., 17; Com. vs. Smith, 11 Allen, 243; U. S. vs. Wilcox, 4 Blatchford, 391 and 393; State vs. Simons, 30 Vt., 621.*

(After hearing argument, the Court sustained the indictment.)

At the trial the State proved the formal allegations in the indictment as set out above, and produced Frederic Vansant, the alleged suborned witness, who admitted that his testimony in the case of State vs. John Lynn, tried at the November Term, 1901, as to seeing Lynn paying one Lawrence M. Whiteman money was false, and testified further as follows:

"I was working at Ninth and Girard, on Tatnall street, tearing down some houses. I think there were five houses there, if I am not mistaken, that we were tearing down, and Richard Fall and Oscar Comegys and Charles Collins were helping me tear them down; and Mr. Fahey and Mr. Lynn drove around there, and halloed for me to come across to them."

Q. Where were you when they halloed for you?

A. On the opposite side of Tatnall street. I went across to Mr. Fahey and Mr. Lynn, and Mr. Fahey said, "Fred—"

Q. (Interrupting witness) Where was Lynn when Mr. Fahey started to talk?

A. Why, I suppose maybe ten or fifteen feet, or a little further than that, down the street from him. Mr. Fahey said, "Fred., Johnson has been up before Bird and stated that he saw Lynn give Whiteman this money in the presence of you"—that is, myself. I said, "Mr. Fahey, I have not anything to do with that. I never saw Mr. Johnson there, never saw anything about it and know nothing about it at all." He said, "I know you did not, but we have got to do something. Lynn is in a hole, and liable to go to the workhouse, and I may get in a hole, and you know how things are, and we want to help him out if we can". I said, "Mr. Fahey, I cannot do anything like that, it might get me in a hole;" and he said, "No, but you must do something for him; we have got to do

the best we can." I said, "I cannot do it," and then he walked down to Lynn and they both came back towards me, and of course, they both came at me, one saying one thing, and the other another. Of course, I cannot remember everything they did say at the time; it would be impossible, and I could not do such a thing. They made some suggestions what they would do, and what he would do, if I would do it."

Q. What suggestion did he make that he would do if you would do it?

A. Well, he said if I would say that I saw Johnson and Lynn and Whiteman have this transaction on the porch, that he would swear he had taken me out there. I said, "Mr. Fahey, you did not take me out there, because I never was out there. I don't know anything about it." "Well," he said, "if you say that you went out there with me, I will swear that I had taken you out there." And of course, they talked on, and planned one thing and another, and finally, of course, I gave my consent that I would do it by him saying that he would swear that he had taken me out there.

The defendant admitted being at the place mentioned by Vansant, together with Lynn, a short time before the trial of the latter, and that he called Vansant over from the buildings to the opposite side of the street and told him that Lynn wanted to talk with him, and then left Vansant and Lynn together, going further up the street and calling another man from the buildings; but denied that he ever had any such conversation with Vansant as the latter had testified to. The defense contradicted Vansant's testimony (to the effect that Fahey talked to him while Lynn walked away) by testimony of one of the witnesses for the State, who was present at the buildings upon the occasion referred to by Vansant, and confirmed the statement of Fahey that he walked off and left Lynn and Vansant talking together.

Vansant was also contradicted upon other material points by several other witnesses, and the defense closed by producing six witnesses, each of whom testified that the reputation of Vansant for truth and veracity was bad, and that they would not believe him on his oath.

LORE, C. J., charging the jury:

Gentlemen of the jury:—Patrick Fahey is charged in the indictment in this case with subordination of perjury.

At common law, perjury is committed "when a lawful oath is administered, in some judicial proceedings or due course of justice, to a person who swears wilfully, absolutely, and falsely, in a matter material to the issue or point in question."

Where the crime is committed at the instigation or procurement of another, it is termed subornation of perjury.

*3 Greenleaf on Evidence, Sec. 188.*

In this case it is charged that Patrick Fahey suborned, or procured, Frederic Vansant to commit perjury.

The crime charged is a felony of high grade. It is one that touches the administration of justice in a vital point, and where successful in its purpose procures a miscarriage of justice by inducing false verdicts, and thus turns right into wrong.

It undermines and destroys the confidence of the people in verdicts of juries, and opens the way to anarchy, or the righting of wrongs by resort to violence instead of to courts of justice.

In this State, happily, the crime is of rare occurrence. No such case has heretofore come within the cognizance of this Court.

This, gentlemen, is the character of the crime you are called to pass upon in this case. It is a crime that invokes the sanction of the Almighty to a lie. We have spoken thus of the gravity of the crime, that your attention should be directed to the importance of this case, and to the care and consideration you should give to it.

But the mere magnitude of the crime charged, however hein-ous, or however difficult it may be to prove it, can never justify a conviction, unless the guilt of the accused be proved to the satisfaction of the jury beyond a reasonable doubt.

In order to convict of this crime, you should be satisfied from the evidence,—

(1)   That the testimony of Vansant, the witness claimed to have been suborned, was false.

(2)   That it was given by him wilfully and corruptly, knowing it to be false.

(3)   That Fahey knew or believed that such testimony would be false.

(4)   And that he also knew or believed that Vansant would willfully and corruptly so testify.

(5)   That Fahey induced or procured Vansant to give such false testimony.

It has been tersely said by the Court in *Commonwealth vs. Douglass, 3 Met., 245*: "To constitute the crime of subornation of perjury, the party charged must have procured the commission of the perjury by inciting, instigating or procuring the guilty party to commit the crime."

Your attention is now directed to some of the principles of law governing this case.

Every person charged with crime is presumed by the law to be innocent, and that presumption remains as a protection and shield until the crime is proved to the satisfaction of the jury beyond a reasonable doubt.

The burden of so proving the crime is upon the State.

"In proof of the crime of perjury, it was formerly held that

two witnesses were necessary, because otherwise there would be nothing more than the oath of one man against another, upon which the jury could not safely convict. But this strictness has long since been relaxed; the true principle of the rule being merely this, that the evidence must be something more than sufficient to counterbalance the oath of the prisoner, and the legal presumption of his innocence."

*1 Greenleaf on Evidence, Sec. 257.*

" The degree of credit which ought to be given to the testimony of an accomplice is a matter exclusively within the province of the jury. It has sometimes been said that they ought not to believe him, unless his testimony is corroborated by other evidence; and, without doubt, great caution in weighing such testimony is dictated by prudence and good reason. But there is no such rule of law; it being expressly conceded that the jury may, if they please, act upon the evidence of the accomplice, without any confirmation of his statement. But on the other hand, judges in their discretion will advise a jury not to convict of felony upon the testimony of an accomplice alone and without corroboration ; and it is now so generally the practice to give them such advice, that its omission would be regarded as an omission of duty on the part of the Judge."   *   *   *   " It may be regarded as the settled course of practice, not to convict a prisoner in any case of felony upon the sole and uncorroborated testimony of an accomplice."

*1 Greenleaf on Evidence, Sec. 380.*

The same rules are applicable to the case of a witness who has perjured himself in a former trial ; and in cases of this character there should not be a conviction of a felony upon the uncorroborated testimony of such a witness.

The rule governing the weight of evidence necessary to convict and as to what constitutes a reasonable doubt, is clearly stated by Chief Justice Gilpin in the *State vs. Goldsborough, 1 Houst. Crim. Cas., 316.* In civil cases it is the duty of the jury " to

weigh the evidence carefully and to find for the party in whose favor it preponderates, although it may not be free from reasonable doubt. But in criminal cases the party accused is entitled to the benefit of the legal presumption in favor of innocence, which in doubtful cases is always sufficient to turn the scales in his favor. It is therefore a rule of criminal law that the guilt of the accused must be fully proved; and neither a preponderance of evidence, nor any weight of preponderating evidence is sufficient, unless it produces full belief of the fact to the exclusion of all reasonable doubt in the mind of the jury. But that does not import in contemplation of law a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which after entire comparison and full consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot feel any abiding conviction to a moral certainty, of the truth of the charge. The burden of proof is upon the prosecutor. All the presumptions of law, independent of evidence, are in favor of innocence; and every person is presumed to be innocent of the offense charged until he is proved guilty. If upon such proof there is reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal, for it is not sufficient to establish a probability, though a strong one, arising from the doctrine of chances, that the fact charged is more likely to be true than the contrary; but the evidence must establish the truth of the fact to a reasonable and moral certainty; a certainty which convinces and directs the understanding, and satisfies the reason and judgment of those who are bound to act conscientiously upon it."

Governed by these instructions as to the law, you are to reach your verdict in this case; from the evidence which you have heard in this Court room and from that alone.

The case challenges your most careful and conscientious consideration. It is your duty alike to see that the innocent are acquitted and that the guilty are convicted.

If, therefore, from the evidence in this case, you are satisfied beyond a reasonable doubt, that Patrick Fahey suborned or procured Frederick Vansant to commit the crime of perjury, as charged in the indictment, your verdict should be guilty. On the other hand, should you not be so satisfied from the evidence, it is your duty to return a verdict of not guilty.

The jury disagreed.