## Strader v. Commonwealth.

(Decided March 27, 1931.)

(As Modified on Denial of Rehearing November 17, 1931.)

560

HENRY S. McGUIRE and EMMETT M. DICKSON for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, Jr., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appeal is by W. P. Strader from a judgment of conviction of the crime of subornation of perjury, which carried with it a sentence of three years in the penitentiary.

The sufficiency of the indictment in several particulars is brought in question. It charged the accused with having procured or caused Taylor to commit the offense of false swearing "by threats to said Taylor that unless he did so falsely swear, his, the said Taylor's home, would be sold and he and his family would be turned out of his home," and that as a result of that procurement Taylor committed the offense of false swearing in Bourbon county, in that "before Julia Walsh, a Notary Public duly authorized to take and administer oaths, in a deposition to be read as evidence in a cause then pending before the Bourbon Circuit Court, entitled Sarah R. Miller v. Frank Taylor, etc., after having been first duly sworn, the said Frank Taylor did unlawfully, willfully, knowingly and corruptly swear, depose and give in evidence" certain testimony. The indictment then specifically negatives its truth and further aptly charges that the accused, Strader, knew that it was "false, corrupt and fraudulent," and suborned Taylor to commit that crime of false swearing.

Before proceeding to consider the criticisms of the indictment, it is well to look to the statutes and to recall the characteristics of the crime charged. The common-law offense of perjury was found too limited in scope to meet the necessity of justice, and many years ago the General Assembly supplemented it by creating the statutory crime of false swearing. "The manifest purpose was to punish the practice of willfully and knowingly making false statements in any and all matters upon which the witness might be sworn, or on which he was required to be sworn." Weiner v. Commonwealth, 221 Ky. 455, 298 S. W. 1075, 1076. For convenience we quote section 1174 of the Statutes:

"If any person, in any matter which is or may be judicially pending, or which is being investigated by a grand jury, or on any subject in which he can legally be sworn, or on which he is required to be sworn, when sworn by a person authorized by law to administer an oath, shall willfully and knowingly swear, depose or give in evidence that which is false, he shall be confined in the penitentiary not less than one nor more than five years."

At common law subornation of perjury is a misdemeanor. Under the Statute, section 1177, it is made a felony and is declared to include the procurement of another "by any means whatever" to commit the statutory crime of false swearing denounced by section 1174 and other related offenses. See Henderson v. Commonwealth, 122 Ky. 297, 91 S. W. 1141, 28 Ky. Lew Rep. 1212.

Our adjective law specially prescribes the manner in which the charges of perjury and subornation of perjury may be presented. Section 134 of the Criminal Code of Practice is as follows:

"In an indictment for perjury, or subornation of perjury, it is sufficient to set forth the substance of the controversy or matter in respect to which the offense was committed, and what court and before whom the oath alleged to be false was taken, and that the court, or the person before whom it was taken, had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned; but the indictment need not set forth the pleadings, record or proceedings with

which the oath is connected, nor the commission or authority of the court or person before whom the perjury was committed.''

The indictment for subornation of perjury must sufficiently charge that the person suborned was guilty of the crime which he was induced to commit. Conn v. Commonwealth, 234 Ky. 153, 27 S. W. (2d) 702, 703. It is that portion of the indictment that is assailed in this case. The points made against its validity will be stated as disposition is made of them respectively.

It is asserted that the indictment does not allege that the Bourbon circuit court had jurisdiction of the case in which Taylor is charged to have sworn falsely. The subject-matter to which false swearing may relate is of distinct classes. We are concerned here with only one class, namely, a ''matter which is or may be judicially pending.'' That comprehends false testimony given in a case pending in a court having jurisdiction of it, otherwise the proceding is a nullity and no crime has been committed. Harkleroad v. Commonwealth, 207 Ky. 552, 269 S. W. 724; Smiddy v. Commonwealth, 214 Ky. 100, 282 S. W. 774. In those two cases the absence of jurisdiction in the court before which the false oath was taken affirmatively appeared in the indictments. In Commonwealth v. Combs, 125 Ky. 273, 101 S. W. 312, 30 Ky. Law Rep. 1300, the indictment charged the accused with perjury committed before a justice of the peace of Lee county during an examining trial of another on the charge of murder. The indictment failed to set forth facts showing jurisdiction in that officer to act, but such omission, it was declared, did not authorize the presumption that he was without such jurisdiction or make the indictment bad. Here the allegation is merely that the person suborned gave false testimony under oath in·''a cause then pending before'' a circuit court. Is that equivalent to charging that the cause was judicially pending—the language of the statute? We think so. A matter judicially pending is a matter awaiting disposition in a court of justice. The ''Bourbon circuit court'' is a court of justice of general jurisdiction. Bringing to bear the provisions of section 122 of the Criminal Code of Practice declaring that an indictment is sufficient if it is in ordinary language, expressed in such manner as to enable a a person of common understanding to know what it intended, and also the special provisions of section 134

above quoted, we are constrained to hold sufficient the allegation being considered.

It is further said that the indictment is fatally defective because it does not allege that Taylor's evidence was (a) material nor state facts showing it to have been material to the issue, or (b) that it was concerning a matter about which he could be legally sworn, or (c) on which he was required to be sworn.

The materiality of the false evidence in a judicial proceeding is not essential to a conviction under the statute defining false swearing, although it is an essential element in the common-law offense of perjury. Commonwealth v. Powell, 59 Ky. (2 Metc.) 10; Commonwealth v. Ransdall, 153 Ky. 334, 155 S. W. 1117; Sullivan v. Commonwealth, 158 Ky. 536, 165 S. W. 696.

The clause in the statute "or on any subject in which he can legally be sworn" applies to a different state of case and is not essential to those accusations coming within the class of false testimony on a matter "which is or may be judicially pending." Commonwealth v. Turner, 98 Ky. 526, 33 S. W. 88, 17 Ky. Law Rep. 925.

Our opinions do not seem to be in perfect harmony as to whether or not in cases of this class it is necessary to charge that the false testimony was such that the party might be required to give. Although not as clearly apparent as it might be, the facts set forth in the indictment show that Taylor's testimony alleged to be false was such that he could have been required under the law to give it. At any rate, the witness recognized the authority of the court and was sworn on the subject, which seems to be sufficient. Sullivan v. Commonwealth, supra.

No difficulty is encountered in disposing of the contention that the charge that the accused caused Taylor to commit the parent offense "by threats" that, unless Taylor did so falsely swear, his home would be sold and his family be turned out, was merely an allegation that the accused had expressed an opinion as to what would otherwise result. It is sufficient under the statute that the accused shall have unlawfully and corruptly caused or procured the commission of the offense "by any means whatever."

The indictment does not allege that the person before whom the oath was taken had authority to administer oaths in Bourbon county. The charge is that Taylor committed the offense "before Julia Walsh, a Notary

Public, duly authorized to take and administer oaths, in a deposition . . . after having been first duly sworn.'' It is essential that the indictment charge that the false testimony or statement was given under an oath administered by an officer having authority to administer it. Sanlin v. Commonwealth, 212 Ky. 394, 279 S. W. 648, 649. One of the defects in the indictment in the Sanlin case was that it simply charged the accused with having sworn to that which was false ''before Judge Sam Hurst (in Owsley circuit court), a person authorized to administer an oath.'' This fell short because it did not state that the accused at the time of making the false statement was testifying under or by virtue of his oath then or previously administered to him by the judge, clerk of the court, or other officer having authority to administer an oath. This indictment alleges that Taylor committed the offense before a certain notary public and that he had been first duly sworn. It does not specifically state that the named notary was the officer who had administered the oath. But taking the two allegations together it is sufficient. Thus in Commonwealth v. Kane, 92 Ky. 457, 18 S. W. 7, 13 Ky. Law Rep. 655, the indictment simply charged that the accused, first having been duly sworn, had testified falsely before a jury in a circuit court. Construing the allegation as a statement that he was sworn as a witness upon the trial, the omission to state that the oath had been administered by the judge or clerk was held not material.

And in Commonwealth v. Schweiters, 122 Ky. 874, 93 S. W. 592, 593, 29 Ky. Law Rep. 417, the accused was charged with having sworn falsely in a deposition ''after being sworn by Clarence E. Walker, a notary public having full power and authority to administer oaths to witnesses and take depositions.'' Pointing out the omission to state that Walker was a notary public in and for Jefferson county (where the offense was charaged to have been committed), and that a notary's authority is confined to the limits designated in his commission, the charge was construed to be merely that the accused had been sworn by a notary public. That was held sufficient so far as the indictment was concerned, although the naming of the officer placed the burden on the commonwealth to prove that the notary public before whom the oath was taken was Clarence E. Walker and that he was authorized to administer an oath in Jefferson county.

We are of the opinion that the appellant was not mislead as to the offense with which he was charged, and therefore that the court properly overruled the demurrer to the indictment. Thomas v. Commonwealth, 175 Ky. 38, 193 S. W. 653.

■ In considering the appellant's claim that the verdict is not supported by the evidence, we have given careful consideration to the record. To write even the substance of all the testimony would extend this opinion to an unwarranted length.

It seems sufficient to state that a contract had been made by Taylor to purchase certain property from Mrs. Sarah R. Miller, which had been negotiated by the appellant. To obtain money for that purpose and to liquidate a debt to a bank, through the agency of Strader he had mortgaged his home place to an insurance company for $2,750. After paying the bank debt, the proceeds seem to have disappeared through commissions paid Strader, premium on an unreasonably large life insurance policy paid his son, about $400 paid Strader to care of Taylor's taxes, and interest on his debts during the ensuing three years, and otherwise. There was nothing left with which to buy the Miller place. Suit was filed by Mrs. Miller for damages for breach of the contract with her on March 2, 1927. On March 4, 1927, a second mortgage to Strader on Taylor's home farm of 41 acres, stated as securing a loan of $2,500, was lodged for record. This bore date of November 17, 1926. There were also a conveyance of the home farm to Taylor's wife, and an assignment to Strader of certain personal property and an interest in his father's estate. Those documents were attacked as fraudulent. Strader defended them—unsuccessfully, as is disclosed by the opinion of Strader v. Miller, 236 Ky. 637, 33 S. W. (2d) 668.

In his deposition taken as on cross-examination on June 3, 1927, in that case, Taylor testified unequivocally and positively that Strader had loaned him the money, and to facts showing that the transaction was genuine. It appears that his property was sold under foreclosure of the insurance company in October, 1928. In that suit Strader had set up his second mortgage and seems also to have subjected or attempted to subject the other interests assigned to him. Then in March, 1929, Taylor gave another deposition in which he repudiated entirely his evidence given in his first deposition, and testified that he had then sworn falsely at the instance of Strader,

whom he claimed had wrongfully led him into his financial difficulties for his own personal gain. The fact that Strader was insisting on realizing on the fraudulent papers, instead of treating them as a sham, seems also to have entered into his changed attitude.

On the trial of the appellant under this indictment, Taylor testified that when Mrs. Miller sued him he went to Strader as a friend for advice and he had advised him to enter into the fraudulent schemes and assisted in arranging them. He signed everything that was put before him. When his deposition was to be taken, Strader and his son came to his home and took him and his wife to Paris. According to Taylor, "He (appellant) said if I didn't get up and swear that I owed him that $2,500 that *he* would put my wife and children out on the road, and of course I got up and swore to it." He also testified that appellant said "*they* would take everything away from me and my wife and put my wife and children out on the road." He testified to further conversations with Strader showing the inducement and coaching by him as to what he should swear. In many material particulars Taylor was corroborated by his wife and by proven circumstances, not only that he had sworn falsely, but had been caused to do so by Strader.

On the other hand, appellant in his defense insisted that Taylor's first testimony was true and undertook to prove that all the transactions were genuine in every particular. He denied emphatically that he had caused him to swear falsely and produced evidence tending to corroborate his claim that Taylor testified truthfully in the first instance and swore falsely in the repudiation. Taylor's reputation for truth and veracity was proven to be bad.

While the evidence introduced by the commonwealth tends to show that the appellant was an avaricious schemer, ready to sacrifice Taylor's veracity and integrity, per contra, the evidence of the defense tends to prove that he was acting as a beneficent friend in time of need and had done nothing wrong. Unquestionably Taylor swore falsely on one or the other occasions. The commonwealth attributes his act in swearing falsely on the first occasion to ignorance, stupidity, and credulity, influenced and inspired by the superior mind of the accused in order to enrich himself at the expense of Taylor. The appellant attributes his repudiation to unscrupulousness, actuated by the possibility of avoiding

his mortgage and obligations to Strader and thereby saving himself a considerable sum of money. Perhaps there is some justification for each deduction. The odium of confessed perjury and willful effort to commit a gross fraud envelops Taylor. The stigma of an unfair advantage taken of an ignorant man attaches to Strader. In any event, all the facts were presented to the jury, and under contrary evidence and conflicting circumstances it was for that body to reject the appellant's defense and to believe that it was proved beyond a reasonable doubt out of the mouths of two witnesses or of one witness and by strong corroborative circumstances that Taylor had sworn falsely and further believe that he had been caused to do so by the accused. We cannot interfere with that verdict unless there was committed during the course of the trial some error prejudicial to the substantial rights of the defendant.

■ On the trial it was proven that the oath was administered to Taylor upon the occasion involved by Julia Walsh acting in the capacity of an examiner, and that she was not a notary public as stated in the indictment. Appellant contends that the admission of Taylor's deposition taken before her as an examiner was error, and that the variance between the allegation of the indictment and the evidence in respect to the title of the officer was a material variance entitling him to a directed verdict of acquittal. The authority of the two officers proceeds from different sources. A notary public is appointed and commissioned by the governor. Section 3721-1, Statutes. An examiner, possessing the same powers in respect to administering oaths to witnesses giving depositions, is appointed by the circuit court. Section 559, Civil Code of Practice. But we do not regard the variance a fatal one. As indicated, it is sufficient on charges of false swearing or subornation of perjury that the officer administering the oath had authority to do so. In the Schweiters case, supra, as suggested, it was held that having named the individual officer it was incumbent upon the commonwealth to prove that he was the one who had acted. Here it was proven that Julia Walsh had administered the oath with authority to do so although in a different official capacity from that stated in the indictment. In Henderson v. Commonwealth, supra, the defendant was accused of having suborned Mary Farmer to swear falsely. Her name, as it developed, was Carrie

Farmer. It was held that the evidence in that particular substantially supported the commonwealth's pleading. The appellant could not have been misled to his prejudice by this difference in title of the officer. The evidence was clear that he knew when and before whom the deposition was taken.

■ The appellant submits that there was a great deal of incompetent evidence admitted against him. But he directs our attention to only two items. One is the answered inquiries that Taylor had been gassed, shell-shocked, and wounded in war service. Without passing upon the relevancy of that evidence, it is apparent that the defendant was not prejudiced thereby for Taylor admitted having been subsequently accepted as an insurable risk to the extent of $10,000, which fact tended to disprove the truth of his testimony as to his physical condition. The other item of evidence to which reference is made is the admission of certain pleadings and depositions in the civil suit in which Taylor had been involved and in which he had given the alleged false deposition.

It was proper, of course, to prove that there was such a proceeding and its nature, and the best evidence was the record. The original depositions taken in that case, including that of the accused, and of Taylor, the person suborned to testify falsely as charged, was presented by the clerk of the court as a witness. When the depositions were offered to be filed and considered read, the trial court ruled that "so much of it as appears relevant" might be so admitted. To this the commonwealth's attorney responded, "Yes, sir, so much and no more." The same consideration was given when other parts of the record were offered. Some of this record was immaterial, but some of it was relevant to the issue joined in the prosecution, and only that part was admitted. As to what was rejected and what let in we have no way to determine, for the entire depositions are in this record without any indication as to what part or parts were permitted to go to the jury. We cannot presume that the trial court committed an error. The presumption is the other way. Steele v. Bryant, 132 Ky. 569, 116 S. W. 755; White v. Turner, 206 Ky. 604, 268 S. W. 291.

■ It is argued that both Taylor and his wife were accomplices of the defendant and there was no corroboration of their evidence. A person suborned cannot be guilty of suborning him. Both, therefore, cannot be

convicted of the same crime, so one cannot be an accomplice of the other. It has been so held quite recently. Conn v. Commonwealth, 234 Ky. 153, 27 S. W. (2d) 702. If Mrs. Taylor should, under the evidence, be considered an accomplice of the accused in causing her husband to swear falsely, all that she testified to was amply corroborated by him, and we may say also, by other evidence.

■ The court defined an accomplice and gave an instruction conformable to section 241 of the Criminal Code of Practice. The instruction, however, says the appellant, was too abstract, in that it did not tell the jury by name that Taylor and his wife were accomplices. It followed the usual form, proper to be given under similar circumstances. Hobson on Instructions, sec 820. He also gave an instruction to the effect that the jury should find the defendant not guilty unless they believed from the evidence beyond a reasonable doubt that the defendant had been proven by two witnesses, or by one witness and strong corroborating circumstances, guilty of subornation of perjury as set out in another instruction. This was properly given in recognition of the "wise old rule of the common law." Hansford v. Commonwealth, 170 Ky. 700, 186 S. W. 498, 501. It followed the language of section 242 of the Criminal Code of Practice and cannot be regarded as too abstract in form as appellant argues.

The complaints lodged against the primary instruction are premised upon the same arguments raised against the indictment. The language of the indictment was followed in referring to the inducement on the part of the defendant as a "threat." It is claimed that, if true, it was merely an expression of opinion on his part as to what would happen to Taylor and his family if he did not swear falsely, and that it was prejudicial for the court to have assumed and referred to it as a threat. In its more terrifying sense the word means a determination to inflict punishment, loss, or pain; but it also means to exhibit the appearance of something evil or unpleasant. Taylor testified Strader said to him that he (Strader) would put his family out in the road, which could be classified as a threat in the harsher sense. He also testified that the defendant said that "they" (referring to his creditors) would evict his family, which statement would be presenting a threat in the sense of directing attention to an unpleasant or painful alternative

result. No harm could have been done the defendant by the use of the word for the statement itself alleged and stated to have been made by him was used in the instruction.

We have already effectually disposed of the claim that it was error to submit the case on the ground that the officer who administered the oath was an examiner and not a notary public, as charged in the indictment. The instruction referred to her as an examiner. The title might well have been omitted. Certainly, no harm was done.

Other arguments that the appellant did not have a fair trial have been considered, but we do not find them sufficiently meritorious to warrant further extension of the opinion.

Perceiving no prejudicial error, the judgment is affirmed.

Whole court sitting.

LOGAN, C. J., and CLAY and RICHARDSON, JJ., dissenting.