CLUCK *v.* STATE.

Crim. 3994

Opinion delivered June 29, 1936.

*Rains & Rains,* for appellant.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams,* Assistant, for appellee.

SMITH, J.   Appellant was given a sentence of one year in the penitentiary upon his trial under an indictment, which, omitting its formal parts, reads as follows.: "The said George Cluck in the county and State aforesaid, on the 26th day of November, A. D., 1935, on his examination as witness for the defendant in the trial of the case of *State of Arkansas* v. *Emmitt Cluck,* charged with grand larceny, at the November, 1935, term of the Crawford Circuit Court at Van Buren, after having been duly sworn to tell the truth, the whole truth and nothing but the truth by Homer Mitchell, circuit clerk, a person duly authorized to administer oaths, he, the said George Cluck did and then and there wilfully, unlawfully and feloniously swore that he was present about the 7th day of July, 1935, at his home near Whitewater in Crawford County, and saw Elvin Davis sell Emmitt Cluck two large hogs and four smaller hogs, same being the hogs Emmitt Cluck was on trial for stealing, that Elvin Davis was driving a gray and black mare, the ones he

had been driving previously to Davis' wagon, that he saw Emmitt Cluck pay Elvin Davis sixteen dollars for said hogs, and that Emmitt Cluck was at the time 19 years old, which said testimony was material in the trial of said cause, but was false and known to be false by the said George Cluck at the time he so testified. The truth being that said hogs had been previously stolen by Emmitt Cluck from Johnnie Barnes, Jimmie Fields, and Jim Davis, that Elvin Davis did not sell hogs to George Cluck or Emmitt Cluck, in the presence of George Cluck on or about the 7th day of July, 1935, and that the said Emmitt Cluck was at the time 23 years old. All of said testimony given by the said George Cluck being false and untrue and that the said George Cluck did falsely, wilfully, corruptly, maliciously, unlawfully, and feloniously commit wilful and corrupt perjury, and against the peace and dignity of the State of Arkansas.''

It will be observed that the indictment alleges that appellant was sworn as a witness by Homer Mitchell, circuit clerk of the court in which the alleged false testimony was given, whereas testimony was admitted without objection or exception to the effect that appellant was in fact sworn by the Hon. J. O. Kincannon, the judge presiding at the trial.

The question whether the allegation of the name and title of the officer administering the oath is a material allegation, and, if so, whether there is a material variance between the allegation and the testimony presents the principal and the most serious question raised on this appeal, which has been duly prosecuted to reverse the judgment of conviction.

It must be confessed that at common-law this was an essential allegation and this difference between the allegation and the proof would constitute a material variance, which would require a reversal of the judgment. There are many cases to this effect. The question here presented is whether this allegation is material under our statutes; and, whether this difference between *allegata et probata* constitutes a material variance.

The case of *Loudermilk v. State*, 110 Ark. 549, 162 S. W. 569, points out some of the relaxations in the

technical strictness of the common-law in prosecutions for perjury. It was there pointed out that an indictment for perjury would be held sufficient when it alleges that the perjured testimony was material, but did not specify how it was material. Our statute modifying the common-law so provides. It was there also held that it was not necessary for an indictment for perjury to expressly state that the court had jurisdiction of the case in which the false testimony was given, but that an allegation that the court had authority to administer the oath was sufficient.

Our statute on perjury provides: "In indictments for perjury, it shall be sufficient to set forth the substance of the offense charged, and by what court or before whom the oath or affirmation was taken, averring such court or person to have competent authority to administer the same, together with the proper averments to falsify the matter wherein the perjury is charged or assigned, without setting forth any part of the record, proceeding or process either in law or equity, or any commission or authority of the court or person before whom the perjury was committed, or the form of the oath or affirmation, or the manner of administering the same." Section 2590, Crawford & Moses' Digest.

In the chapter on criminal procedure, the following section appears: "In an indictment for perjury, it is not necessary to set forth the pleadings, record or proceedings with which the oath is connected, so that the substance of the controversy, or matters in respect to which the offense was committed, is properly stated; nor is it necessary to set forth the commission or authority of the court or person before whom the oath alleged to be false was taken, so that it be stated in what court or before whom it was taken, and that the court or person was authorized to administer the oath." Section 3023, Crawford & Moses' Digest.

The effect of these sections is that the allegation that the court had authority to administer the oath is sufficient, and that allegation sufficiently appears in the indictment copied herein. It would appear therefore that the allegation that appellant was sworn "by Homer

Mitchell, circuit clerk" was unnecessary as the indictment would otherwise have been sufficient without naming the officer who had administered the oath, and without recitation of the title of his office.

In the chapter on perjury, 48 Corpus Juris, page 875, a paragraph of § 124 thereof has the caption "Naming Officer" who administered the oath. It was there said: "While such designation may call for an averment of the name of such officer, it is generally held that where the offense was committed in a judicial proceeding, it is not necessary to name the officer before whom the false oath was taken, designating the court being considered sufficient; and where the court or presiding judicial officer acts through another in administering the oath, an averment that the oath was administered by the court or by the presiding judicial officer is sufficient." Numerous cases are there cited in support of the text quoted.

If naming the officer, with the title of his office, is not essential, what is the effect of this unnecessary allegation and the failure to prove it?

Among the numerous cases which answer this question, that of *West* v. *U. S.*, 169 C. C. A. 429, 258 Fed. 413, is directly in point. The authority of this case is enhanced by the fact that the decision thereof turned upon the construction of Federal statutes in many respects identical with, and in no material respect different from, our own statutes applicable to the question under consideration. The indictment in that case alleged that the accused had been sworn by his Honor, John E. Sater, the presiding judge, whereas the testimony was to the effect that the oath had been administered by a deputy clerk of the court. The indictment was based upon a Federal statute reading as follows: "It shall be sufficient to set forth the substance of the offense charged upon the defendant, and by what court, *and* before whom the oath was taken, averring such court or person to have competent authority to administer the same, * * * and without setting forth the commission or authority of the court or person before whom the perjury was committed."

A comparison of this statute with § 2590 of our statutes, set out above, shows their substantial identity.

Circuit Judge Knappen, for the circuit court of appeals, there said that: "The indictment was sufficient in form and the deputy clerk had full authority to administer the oath in the court's presence. It was not necessary to allege the name of the clerk who administered the oath or that of the judge who took it." (Citing cases.) The court said: "Apparently the word 'and,' italicized above, means 'or'." It is not necessary to invoke this construction of our statute for it will be observed that our statute employs the disjunctive "or" rather than the conjunctive conjunction "and." The court said: "If there is merit in the objection that the evidence of the administering of the oath was insufficient, it can only be because of a fatal *variance* between the indictment and the proof."

In holding there was no such variance, the court said that, assuming the intention was to charge that Judge SATER personally administered the oath, the variance was not fatal. It was there said: "Were there reason to believe that plaintiff in error was misled to his prejudice, in preparation for defense or otherwise, by an allegation, express or implied, however unnecessarily made, that Judge SATER personally administered the oath, the case would be different," but that no such showing was made and that the frame of the indictment was such as to preclude all possibility of a second prosecution for the same offense. Unquestionably there can be no second prosecution here for the offense charged in the indictment.

The court of appeals assigned as its reason for holding that the variance was not fatal the provisions of § 1691 of the Compiled Statutes, reading as follows: "No indictment * * * shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

We have the same statute. Section 3014, Crawford & Moses' Digest, reads as follows: "No indictment is

insufficient, nor can the trial, judgment or other proceedings thereon be affected by any defect which does not tend to the prejudice of the substantial rights of the defendant on the merits."

The court concluded its review of the effect of these two sections of the Federal statutes, substantially identical with our own, by saying: "While neither of these sections attempts to sanction a violation of substantial rights or to disregard prejudice, yet an immaterial and nonprejudicial variance between allegation and proof is not cause for reversal." Citing among other cases, that of *Matthews* v. *U. S.*, 161 U. S. 500, 40 L. Ed. 786, 16 S. Ct. 640. See also *Cain* v. *State*, 73 S. E. 623, where a headnote prepared by the court of appeals of Georgia, reads as follows: "When, in the course of a judicial investigation, an attorney at law, by the authority or permission of the court, administers the oath to a witness, he does so in behalf of the court. Consequently it may properly be alleged, in an indictment assigning perjury upon the testimony of such a witness delivered in a court of inquiry, that the oath was administered by the presiding magistrate."

A headnote in the case of *State* v. *Caywood*, 96 Ia. 367, 65 N. W. 385, reads as follows: "Held, that the judge sitting as a court has power to administer oaths, and an indictment charging that defendant, during a trial, was sworn by 'the court,' is sustained by evidence that the oath was administered either by the presiding judge or by the clerk under his direction."

A headnote in the case of *State* v. *Pratt*, 21 S. Dak. 305, 112 N. W. 152, reads as follows: "In a prosecution for perjury, where the information alleges that the defendant was sworn by the court at the time of the alleged perjury, and the evidence shows that the oath was administered by the duly elected, qualified and acting clerk in open court, in the presence of the presiding judge, there was not a fatal variance." See also *Strader* v. *Commonwealth*, 240 Ky. 559, 42 S. W. (2d) 736; *Commonwealth* v. *Kane*, 92 Ky. 457, 18 S. W. 7; *Ruff* v. *State*, 17 Ga. App. 337, 86 S. E. 784; *Smith* v. *People*, 32 Colo.

251, 75 Pac. 914; *People* v. *Nolte,* 44 N. Y. S. 443; *State* v. *Spencer,* 6 Oregon 152. .

In the case of *Cutter* v. *Territory,* 8 Okla. 101, 56 Pac. 861, an indictment for perjury alleged that the oath had been administered by the court, whereas the testimony showed its administration by the clerk of the court. The Supreme Court of Oklahoma said: "A district court consists of a judge, clerk, and other officers. A clerk is as necessary to a properly constituted district court as a judge, and it has been frequently held that what the clerk does in open court, in the presence of the judge, is the act of the court. At common-law it was necessary to allege the name and office of the person administering the oath, and a variance in this respect was fatal. 2 Whart. Cr. Law, 1287. This rule is still adhered to in many of the States. But it has been held, under Codes similar to ours, that it is sufficient to allege the taking of an oath in the court, or before the court, and proof of taking the oath before any officer of the court, in the presence of the court, will sustain an allegation of being sworn by or before the court. (Citing authorities.) Swearing before a clerk in open court is equivalent to swearing before the court."

The Supreme Court of Oklahoma, after holding as appears from the above quotation that an allegation as to the particular officer administering the oath was unnecessary and that, in the absence of such an allegation proof of administration of the oath by either the judge or the clerk of the court would have sufficed, proceeded to say that the unnecessary allegation having been made, it was necessary to prove it.

This, however, is not our practice in regard to immaterial allegations which are treated as surplusage. In the case of *Jenks* v. *State,* 63 Ark. 312, 39 S. W. 361, the appellant, a convict, had been convicted of escaping from the State penitentiary. The testimony showed that he had effected his escape in the county in which the penitentiary was located, but not from the penitentiary, as charged in the indictment. In holding this variance immaterial, Justice RIDDICK said: "It is a violation of the statute for a convict to escape at any

place, whether from the penitentiary or not. To determine the venue and jurisdiction over the offense, it was necessary to allege and prove the county in which the crime was committed, and that was done in this case. Beyond this, the reference to the penitentiary or place from which the convict escaped was wholly unnecessary and immaterial, and may therefore be rejected as surplusage. It is not necessary to show that such an offense was committed in the place alleged, if it be shown to have been committed in some other place in the same county."

We therefore hold that the variance is immaterial.

It is insisted that the testimony does not show that the allegation that Elvin Davis was driving a gray and black mare was false, but it was affirmatively shown that Davis did have, and drove, a black and gray mare. This, however, was not the testimony traversed as being false. The testimony traversed as being false was that appellant saw Elvin Davis sell the defendant Emmit Cluck certain hogs, whereas the hogs had been previously stolen by Cluck from certain parties named, and that Davis did not sell the hogs to Cluck.

It is insisted that the testimony does not show that Emmitt Cluck was ever tried for the larceny of the hogs nor does it show the court in which the trial occurred. The clerk of the court, after testifying that he was the clerk of the Crawford Circuit Court, and had attended the November, 1935, term of the court in that capacity, stated that he knew of his own knowledge that appellant had testified in the trial of Emmitt Cluck. The stenographer who had reported that trial read from his notes the testimony of appellant given at the trial of Emmitt Cluck upon the charge of stealing the hogs.

The objection that the testimony does not show when the alleged false testimony was given is answered by saying that the clerk testified that Emmitt Cluck was tried at the July, 1935, term of court which was within three years of the date of the indictment.

The only other assignment of error which we regard as of sufficient importance to require discussion relates to the refusal of the court to grant a continuance

on account of the absence of John Atwell, who was unable to attend court on account of illness and who if present would have testified "that Elvin Davis came to his (Atwell's) house hunting hogs and that he asked him what kind of hogs he was looking for and he testified that just any kind of hogs that he could find; he would also testify that Elvin Davis' character is bad and that he would not believe him on oath."

A brother of the absent witness testified that he was present when the alleged remark about the hogs was made, and that it was made by Bill Davis, a brother of Elvin, in Elvin's presence.

It is not shown of what value it would have been to appellant to make it appear that the man appellant had sworn had sold the hogs to Cluck was a man who had stated that he did not care whose hogs he found except by way of impeachment of Elvin Davis as a witness. It would certainly not have tended to show the good faith of the alleged purchase from Elvin Davis and was merely cumulative of other evidence tending to impeach Elvin Davis.

When objection was made to the proof of the statement of Elvin Davis by the witness Roland Atwell, appellant's counsel said: "It is not for the purpose of impeaching Davis. The purpose is for showing that he was looking for these hogs." The recited testimony of the absent witness was not competent or of value for any purpose except that of impeaching Davis. There was therefore no error in refusing a continuance on account of the absence of a witness whose testimony would have been of no value except for the purpose of impeachment, and for this purpose it would have been cumulative of other testimony tending to impeach Elvin Davis offered by appellant. It has been uniformly held that it is not error to refuse a continuance on account of the absence of a witness whose testimony would have been merely cumulative. *James* v. *State,* 161 Ark. 389, 256 S. W. 372.

Upon a consideration of the whole case we think no error appears, and the judgment must be affirmed. It is so ordered.

JOHNSON, C. J., BUTLER, and BAKER, JJ., dissent.