**STATE of Utah, Plaintiff and Respondent,**

v.

**George David MELLEN, Defendant and Appellant.**

No. 15528.

Supreme Court of Utah.

July 17, 1978.

---

7. *State v. Kirkman*, 20 Utah 2d 44, 432 P.2d 638 (1967).

8. *State v. Thomas*, 121 Utah 639, 244 P.2d 653 (1952).

Bruce C. Lubeck of Salt Lake Legal Defender Assn., Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Defendant George David Mellen appeals from his conviction by a jury of aggravated kidnapping[1] and aggravated sexual assault.[2] He contends that the trial court committed prejudicial error: (1) in becoming adversarial in questioning a defense witness; and (2) in excluding the testimony of two lay defense witnesses offered in support of his defense of insanity.

The victim, T——— S———, a young woman 20 years of age, testified that on the afternoon of March 13, 1977, she was walking northward on State Street in downtown Salt Lake City when the defendant pulled his car alongside the curb and asked if she wanted a ride. When she refused, he grabbed her arm and forced her to get into the car and asked for her address. He drove there, stopped momentarily, then quickly drove away. Inasmuch as the appellant's brief does not disagree with the State's version of the facts, we spare unnecessary detail. The victim says that defendant put his hands on her throat, threatened her life and thus, by fear, compelled her to perform an act of sodomy (fellatio) upon him.[3] Whereafter, he drove back near her home, again threatened her, warned her not to contact the police, and let her go.

1. U.C.A., 1953, 76–5–302.

2. U.C.A., 1953, 76–5–405.

3. U.C.A., 1953, 76–5–403.

As a result of inquiry and investigation, the defendant was arrested on May 4, 1977. He was temporarily committed to the Utah State Hospital for examination and observation. Pursuant thereto, he was released and certified as competent to stand trial. In subsequent conversations with the police, he admitted his complicity in the above described episode.

The defendant's first contention relates to the testimony of a psychiatrist, Dr. James Whitten, who examined him in August 1977, thus 5 months after the crime. He diagnosed the defendant as being affected by paranoid schizophrenia and stated that it was his opinion that the defendant was legally insane at the time of the offense. After cross-examination, the judge questioned Dr. Whitten as follows:

THE COURT: I take it, Doctor, that you make your diagnosis of the mental state of an individual based on his behavior pattern at a certain time as to what he says and what he does in your experience, is that correct?

A: That's correct, mostly his thinking at that time.

THE COURT: So, if we were to look back to March the 13th what he says and does at that time would be in his behavioral pattern, and that's what you would have to base your opinion on?

A: I would—that's true.

THE COURT: And schizophrenic goes in cycles, does it not?

A: Characteristically.

THE COURT: . . . and they are responsible at times, is that correct?

A: Quite.

THE COURT: And at times they do know the difference between right and wrong and can choose the right from the wrong?

A: Absolutely so.

4. Utah Const., Art. I, Sec. 11.

5. *State v. Gleason*, 86 Utah 26, 40 P.2d 222 (1935).

6. Id.

7. *Tilford v. State*, Okl.Cr., 437 P.2d 261 (1967); *Richmond v. State*, Okl.Cr., 456 P.2d 897

THE COURT: So it depends upon the behavior pattern at any particular time that you're trying to examine as to whether or not he would be responsible.

A: That's correct.

### The Court's Cross-Examination of a Witness

■ The following observations are to be made in regard to the defendant's attack upon the foregoing procedure: In addition to the important right to have access to the courts,[4] it is equally important that the court be a fair and impartial one, committed to the purpose of seeking truth and doing justice, without bias or prejudice, fear or favor. In pursuing that objective, it is not to be questioned that, particularly in a jury trial, a judge should maintain an attitude of neutrality and should not, either by his comments or demeanor, indicate his opinions either as to the credibility of evidence or on the disputed issues of fact.[5] Consistent with the foregoing, the judge should and normally does exercise restraint in examining witnesses, so that he does not unduly intrude into the trial or encroach upon the functions of counsel.[6]

Notwithstanding what has just been said, the judge does have a function beyond sitting as a comparatively silent monitor of the proceedings.[7] In order to discharge his responsibility of carrying out the above-stated objective, it is within his prerogative to ask whatever questions of witnesses as in his judgment is necessary or desirable to clarify, explain or add to the evidence as it relates to the disputed issues.[8] We think that the questions above quoted, which the judge put to Doctor Whitten, fall within the ambit of the principles just stated.

### Exclusion of Evidence Re Insanity

After Dr. Whitten testified, the defense indicated its intention to call lay-witnesses

(1969). It has sometimes been said that the judge should be something more than an ornament to the furniture, and with little adornment value at that.

8. *State v. Gleason, supra* note 5.

in further support of its defense of insanity. The court excused the jury in order to hear the proffer of the testimony. The proposed witnesses were attorney Ronald Yengich, who had earlier acted as appointed counsel for defendant, and Mr. Randal Oster, a psychologist who had worked for the mental health center and with prisoners at the county jail. Both had had conversations with the defendant. In summary, the offer was that the defendant had related to them certain fantasies and delusions, upon which they would agree with the diagnosis of Dr. Whitten that, as of the time of their conversations, considerable time subsequent to the crime, the defendant was a paranoid schizophrenic and not responsible for his actions. On the basis of that proffer, the court excluded the proposed evidence.

■ In regard to defendant's attack on that ruling: we have no disagreement with cases cited by him indicating that under appropriate circumstances a lay person may testify that, in his judgment, someone else is insane.[9]

The "appropriate circumstances" are where the symptoms of insanity are so obvious that a lay person could reliably form a judgment thereon. That is but one aspect of mental disorders. It is to be realized that the term "insanity" is a broad one, used to denote a wide spectrum of mental defects and diseases. They vary between the extreme just referred to, where the manifestations are so plain that anyone could see that the subject is insane, to cases on the borderline, or special aberrations which are difficult to perceive and diagnose.

From what has been said above, including the tests at the hospital and the certification therefrom, it does not appear that this defendant manifested any such obvious symptoms of insanity that a lay person could reliably form such a judgment. Moreover, as the trial court observed, from the proffered evidence it did not appear that either witness would have a basis for judging the defendant's sanity at the time of the offense.[10] In addition to the facts just recited which would make the proffered testimony extremely questionable as to probative value, the court was aware that the position of the defense had already been covered by what must be regarded as the superior testimony of Dr. Whitten so that the testimony of the lay witnesses, in addition to being of highly questionable probative value, would in any event be but cumulative.

■ Because of the special character of evidence relating to disorders of the mind, the general rule is that the trial court has considerable latitude of discretion in ruling on such evidence;[11] and that they should not be disturbed unless it clearly appears that he abused his discretion and thus committed error which was prejudicial to the defendant in that there is a reasonable likelihood that the result would have been different if the error had not been committed.[12] Our analysis as set forth above does not·persuade us that any such error was committed in this trial.

In support of the conclusion just stated concerning the defense of insanity, it is also to be kept in mind that the jury had both the duty and the privilege of considering therewith all of the evidence in the case concerning the defendant's conduct in relation to his apparent planning and carrying out of the crime. It hardly needs to be

---

9. *State v. Robison*, 99 Ariz. 241, 408 P.2d 29 (1965); *State v. Johnson*, 69 Wash.2d 264, 418 P.2d 238 (1966); *Criswell v. State*, 84 Nev. 459, 443 P.2d 552 (1968); *State v. Randol*, 212 Kan. 461, 513 P.2d 248 (1973); *People v. Medina*, Colo., 521 P.2d 1257 (1974); *State v. Lujan*, 87 N.M. 400, 534 P.2d 1112 (1975).

10. This ruling is also consistent with the idea that, due to the nature of this particular mental defect, the fact that these witnesses may have thought he was so affected some time after the

crime, is not necessarily probative as to his mental condition at the time of its commission. See statement in *State v. Gleason*, 17 Utah 2d 150, 405 P.2d 793 (1965).

11. *Chase v. State*, Alaska, 369 P.2d 997 (1962); *State v. Cutler*, 94 Idaho 295, 486 P.2d 1008 (1971).

12. *State v. Kazda*, Utah, 540 P.2d 949 (1975) and authorities cited therein.

stated that there is ample basis therein upon which they could believe beyond a reasonable doubt that his claim that he was insane to the point of nonresponsibility at the time was but an attempt to delude them; and that he knew very well both the nature and the evil of his violation upon this young woman.

There is shown no error prejudicial to the defendant that would warrant overturning his conviction.

Affirmed. No costs awarded.

ELLETT, C. J., and WILKINS and HALL, JJ., concur.

MAUGHAN, J., concurs in result.