2006 UT App 177

**STATE of Utah, Plaintiff and Appellee,**

v.

**Arielle M. BECK, Defendant and Appellant.**

**No. 20030958–CA.**

Court of Appeals of Utah.

May 4, 2006.

---

Edward K. Brass, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Karen A. Klucznik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., DAVIS and THORNE, Jr., JJ.

## OPINION

DAVIS, Judge:

¶ 1 Defendant Arielle M. Beck appeals her convictions for forcible sexual abuse, a second degree felony, *see* Utah Code Ann. § 76–5–404 (1999); for unlawful supply of alcohol to a minor, a class A misdemeanor, *see id.* § 32A–12–203 (2001); and for violation of a civil stalking injunction, a class A misdemeanor, *see id.* § 76–5–106.5 (Supp.2001). We reverse and remand.

## BACKGROUND

¶ 2 In its March 5, 2004 amended information, the State charged Defendant with, among other offenses, forcible sodomy, *see id.* § 76–5–403 (1999); forcible sexual abuse, *see id.* § 76–5–404; unlawful supply of alcohol to a minor, *see id.* § 32A–12–203; per-

mitting unlawful driving, *see id.* § 53–3–203 (2002); and violation of a civil stalking injunction, *see id.* § 76–5–106.5. The State alleges that Defendant was involved in a sexual relationship with K.S., a fourteen-year-old girl whom Defendant knew through her work as a softball coach and as a teacher's assistant at K.S.'s school. The State also alleges that during the course of the relationship, Defendant supplied K.S. and other minors with alcohol and contacted her in violation of a stalking injunction.

¶ 3 Although Defendant acknowledges that she had a friendship with K.S. and had sent thirty to forty emails to her, she denies having had any sexual contact with K.S., providing alcohol to K.S. or other minors, and authoring any emails indicating an inappropriate relationship with K.S. Defendant admits that she met with K.S. after a stalking injunction was in place, but claims she did so at K.S.'s invitation and only out of concern that K.S. was contemplating suicide.

¶ 4 At trial, K.S. testified that Defendant had kissed and touched her sexually on several occasions, including school football games, and had once engaged in oral sex in K.S.'s bedroom when her parents were away. Some of K.S.'s testimony was supported by other witnesses, including friends her own age who testified to seeing Defendant and K.S. kissing and touching, and her high school principal who testified to seeing Defendant and K.S. engage in inappropriate wrestling and other forms of physical contact at school. Other witnesses testified to being present when Defendant gave alcohol to K.S.

¶ 5 The State also presented written and email correspondence purportedly sent from Defendant to K.S. indicating the development of a romantic relationship. K.S. denied having authored the correspondence or having access to Defendant's email account, and K.S.'s English teacher testified that the writing style of the correspondence was more developed than K.S.'s. The State's fingerprint expert testified that Defendant's fingerprints and palm prints were on some of the written correspondence, and the State's handwriting expert offered his opinion that Defendant had written the letters.

¶ 6 Defendant called several witnesses who controverted K.S.'s testimony and testified that Defendant was not where K.S. claimed she was on particular dates. Defendant also called expert witnesses who testified that the correspondence did not match Defendant's composition style and that the handwriting on the correspondence was not Defendant's but was likely written by someone familiar with her handwriting. Finally, Defendant herself testified that she had not had a sexual relationship with K.S., had never sent her romantic correspondence, and had never provided alcohol to her. She testified that she had once given her email password to K.S. and that she regularly gave her writing paper to students.

¶ 7 After the State's cross-examination of Defendant, the trial judge extensively questioned her about several aspects of her case, focusing on why she had not produced certain items of evidence and whether the high school principal had told her one of her letters was "incriminating." Defense counsel conducted redirect, and afterwards, the trial judge again questioned Defendant, asking her to explain why she had not turned her computer over to investigators and to describe again how she thought her fingerprints might have appeared on written correspondence she had denied authoring.

¶ 8 At the close of evidence, the trial court instructed the jury that "[i]f I have said anything which suggests that I favor one side or another in this case, please disregard it." The jury acquitted Defendant of forcible sodomy and permitting unlawful driving, but convicted her of three counts of forcible sexual abuse, one count of unlawful supply of alcohol to a minor, and one count of violating a civil stalking injunction. Defendant appeals the convictions.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 On appeal, Defendant contends that a new trial is warranted because the trial judge's apparent bias was unfairly prejudicial to her trial.[1] Defendant failed to object to the trial judge's behavior at trial, and as such, she bases her appeal on the plain error and "extraordinary circumstances" doctrines.[2] To establish plain error, a defendant must demonstrate that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the [defendant], or phrased differently, our confidence in the verdict is undermined." *State v. Casey*, 2003 UT 55, ¶ 41, 82 P.3d 1106 (quotations and citation omitted). "To show obviousness of the error, [a defendant] must show that the law was clear at the time of trial." *State v. Garcia*, 2001 UT App 19, ¶ 6, 18 P.3d 1123. To establish "extraordinary circumstances," a defendant must establish that the error is the type of "'rare procedural anomal[y]'" that, if left unreviewed, would result in manifest injustice. *State v. Nelson–Waggoner*, 2004 UT 29, ¶ 23, 94 P.3d 186 (citation omitted).

## ANALYSIS

¶ 10 Defendant alleges that the trial judge created an appearance of bias against her when he twice examined her at length before the entire jury. Under the Utah Rules of Evidence, "[t]he court may interrogate witnesses, whether called by itself or by a party." Utah R. Evid. 614(b). "'It is within the judges's prerogative to "ask whatever questions of witnesses as in his judgment is necessary or desirable to clarify, explain[,] or add to the evidence as it relates to the disputed issues."'" *State v. Nichols*, 2003 UT App 287, ¶ 47, 76 P.3d 1173 (quoting

1. Defendant also asserts on appeal that a new trial is warranted because (1) the trial judge demonstrated actual bias against Defendant in his jury voir dire, cross-examination of Defendant, and sentencing; (2) the jury voir dire regarding potential juror bias was inadequate; (3) the jury instructions were erroneous; and (4) the State committed prosecutorial misconduct by improperly cross-examining defense witnesses. Because our ruling regarding the trial judge's apparent bias is dispositive, we need not address these other issues.

2. Defendant also claims her convictions should be reviewed and reversed for ineffective assistance of counsel. Because we conclude that the trial court committed plain error and that extraordinary circumstances existed, we need not address this alternative ground.

*State v. Boyatt*, 854 P.2d 550, 553 (Utah Ct.App.1993) (quoting *State v. Mellen*, 583 P.2d 46, 48 (Utah 1978))). Nonetheless, " '[i]t is generally held that in the exercise of his right to question a witness, the judge should not indulge in extensive examination or usurp the function of counsel.' " *Id.* at ¶ 49 (quoting *State v. Gleason*, 86 Utah 26, 40 P.2d 222, 227 (1935)).

¶ 11 Courts have long recognized that a trial judge's comments and actions carry a great deal of influence with a jury:

> The influence of the trial judge on the jury is necessarily and properly of great weight and his lightest word or intimation is received with deference, and may prove controlling. A trial judge's position before a jury is overpowering. His position makes his slightest action of great weight with the jury.

*United States v. Nickl*, 427 F.3d 1286, 1295 (10th Cir.2005) (citing *Quercia v. United States*, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933)) (other quotations, citations, and alteration omitted). Thus, in order to assure a fair outcome and maintain public confidence in the legal system, it is paramount that the trial judge maintain the appearance of impartiality, especially in jury trials. *See State v. Gardner*, 789 P.2d 273, 278 (Utah 1989) ("Nothing is more damaging to the public confidence in the legal system than the appearance of bias or prejudice on the part of the judge."); *Mellen*, 583 P.2d at 48 ("[P]articularly in a jury trial, a judge should maintain an attitude of neutrality and should not, either by his comments or demeanor, indicate his opinions either as to the credibility of evidence or on the disputed issues of fact.").

¶ 12 In addressing whether the trial judge committed plain error or manifest injustice here, we note that this case was complex, involving over forty witnesses, a detailed timeline of events spanning several months, numerous items of electronic and written correspondence, and conflicting expert testimony. Also, because the State and Defendant offered starkly different renditions of events, much depended on the credibility of the witnesses, particularly that of Defendant. Under such circumstances, it should have been obvious that such extensive questioning of Defendant by the trial judge would risk signaling the judge's skepticism—either actual or perceived—to the jury. *See United States v. Carpenter*, 776 F.2d 1291, 1294 (5th Cir.1985) ("[T]his [c]ourt is particularly sensitive to a trial judge's questioning of the defendant, because when a defendant takes the stand in his own behalf, any unnecessary comments by the court are too likely to have a detrimental effect on the jury's ability to decide the case impartially." (quotations, citation, and alteration omitted)). Despite this risk, the trial judge extensively questioned Defendant twice—once after the State's cross-examination and again after the defense's redirect. We conclude that in doing so the trial judge committed obvious error, and failure to review the same would result in manifest injustice.

¶ 13 Further, the judge's questioning was sufficiently extensive to result in prejudice to Defendant and to undermine our confidence in the verdict. *See Casey*, 2003 UT 55 at ¶ 41, 82 P.3d 1106. Even if the judge's questions were intended to clarify factual ambiguities, his intervention appeared to be adversarial and to challenge Defendant's credibility. The judge asked her why no emails of the type she described were found on K.S.'s computer, whether she still had the letter she claims K.S. wrote to her, whether she asked K.S. if her call was a "set up," whether she had saved a copy of the computer chat message she claims K.S. wrote to her, whether the principal did in fact tell Defendant the letter she wrote was "incriminating," how K.S. could have written about Defendant cutting her finger when the event occurred in Iowa, why Defendant had not provided police with her computer, and how her fingerprints could have appeared on the letters she claimed she did not send to K.S. While each question challenged Defendant to explain weak aspects of her case, the fact that the judge emphasized these weaknesses to the jury in his inquiry would have given the jury the impression that he considered her testimony doubtful. In this complex criminal case involving several charges of varying degrees of severity where the jury could have chosen among several possible

outcomes, we cannot say with certainty that the jury would have reached the same outcome absent the judge's intervention.

¶ 14 The State argues that Defendant was not unfairly prejudiced by the judge's questions because the judge instructed the jury to disregard any perceived favoritism. A jury instruction will theoretically reduce the jury's reliance on perceived judicial favoritism, *see State v. Tueller,* 2001 UT App 317,¶ 13, 37 P.3d 1180, but as a practical matter, reciting an instruction at the end of the trial does not necessarily remedy an impression of favoritism in every case, *see United States v. Filani,* 74 F.3d 378, 386 (2d Cir.1996). Here, where the trial judge twice subjected Defendant to extensive questioning, his apparent skepticism of her testimony was not mitigated by his later statement that, as a general matter, he was neither permitted to nor intended to express a preference for either side.

¶ 15 The State also contends that the jury's mixed verdict indicates it was not unduly influenced by the judge's questions. Although some courts have relied on a mixed verdict as evidence that the jury was not unduly swayed by the judge's comments, *see United States v. Adedoyin,* 369 F.3d 337, 343 (3d Cir.2004), *cert. denied,* 543 U.S. 915, 125 S.Ct. 131, 160 L.Ed.2d 198 (2004), the mixed verdict in this case is inconclusive. The verdict may suggest that the jury was inclined to acquit Defendant on all counts but for the judge's intervention. Or it may suggest that the jury was not swayed by the judge's intervention as evidenced by its willingness to acquit on some counts. Either conclusion is feasible.

## CONCLUSION

¶ 16 We conclude that in a complex criminal case such as this, the trial court committed obvious error in engaging in prolonged, adversarial questioning of Defendant. Absent such error, we cannot say there is no reasonable likelihood that the outcome of this case would have been different. Accordingly, we reverse and remand for a new trial.

¶ 17 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and WILLIAM A. THORNE JR., Judge.