2007 UT 60

**STATE of Utah, Plaintiff and Petitioner,**

v.

**Arielle M. BECK, Defendant and Respondent.**

No. 20060609.

Supreme Court of Utah.

Aug. 10, 2007.

Mark L. Shurtleff, Att'y Gen., Happy Morgan, Karen A. Klucznik, Asst. Att'y Generals, Salt Lake City, for plaintiff.

Edward K. Brass, Salt Lake City, for defendant.

WILKINS, Associate Chief Justice:

¶ 1 Defendant Arielle Beck was convicted by a jury on three counts of forcible sexual abuse and other lesser charges. During the trial, the district judge actively questioned Beck in the presence of the jury concerning weak points in her testimony. She was convicted, and appealed. The court of appeals reversed, holding that the judge's questioning created an impermissible appearance of bias against Beck by the court, and was an error that should have been obvious to the judge at the time. The state sought certiorari on two issues, which we granted. We affirm.

## BACKGROUND

¶ 2 Beck, a teacher, was convicted of having had a sexual relationship with K.S., a fourteen-year-old girl, whom she met through her work as an assistant softball coach.[1] In connection with her relationship with K.S., Beck was charged with three counts of forcible sexual abuse and one count each of forcible sodomy, child abuse, unlawful supply of alcohol to a minor, permitting unlawful driving, and violating a stalking injunction.

¶ 3 The State presented the testimony of K.S. and several of her friends, e-mail and handwritten letters from Beck indicating an inappropriate relationship, and testimony from handwriting and fingerprint experts that Beck had indeed written the letters. Beck denied having any sexual contact with K.S., writing any romantic correspondence, and committing the other crimes charged.

¶ 4 During the five-day trial, the district judge directly questioned several witnesses, including Beck. After Beck's cross examina-

tion, the judge asked her, among other things, why certain benign e-mails she testified to having written did not appear on the victim's computer; when she had been asked not to return to the victim's school; what she discussed with the school's principal; what she had or had not told the victim about circumstances in her life; why she had not voluntarily provided her computer to police investigators; whether the letters were written on her writing paper; and to explain how someone else might have obtained her writing paper with her fingerprints on it. No objection to the judge's questioning appears in the record.

¶ 5 The jury convicted Beck on the forcible sexual abuse, alcohol, and stalking charges but acquitted her on the forcible sodomy, child abuse, and unlawful driving charges. On appeal, the court of appeals reversed the convictions and ordered a new trial. The primary basis for the reversal was the appearance of bias against Beck created by the adversarial questioning by the judge.

## ANALYSIS

¶ 6 On certiorari we review the decision of the court of appeals, not that of the trial judge. In most certiorari reviews, we limit ourselves to issues of law, reviewing them for correctness. Such is the case here.

¶ 7 We have agreed to address two questions:

1. Whether the district court's questioning of Defendant exceeded the range of discretion permitted by the rules of evidence and case law.

2. Whether the court of appeals applied the correct burdens on appeal in its assessment of prejudice.

¶ 8 Since no objection was made at the time to the questioning by the judge, appellate review would normally be precluded for failure to preserve the error. The purpose of preserving the error is to assure that the trial court has had the claimed error brought to its attention in a timely fashion, allowing

---

1. For a more detailed description of the facts this case, see *State v. Beck*, 2006 UT App 177, ¶¶ 2–8,

136 P.3d 1288.

the trial court the first opportunity to address and correct the problem. Doing so greatly increases the likelihood that a just and efficient process will be employed in the first instance.

¶ 9 When an objection is not made at the time, the ability to insist on review of the claimed error is decreased significantly. The appellant must demonstrate that the error was so obvious and hurtful, or that, obvious or not, it was so unjust, that to refuse to consider it on appeal would be an additional travesty. The plain error doctrine affords one such avenue for review.

¶ 10 The court of appeals reviewed, and reversed, the convictions under a plain error rubric. To demonstrate plain error, we require the defendant to establish that an error occurred; that the error should have been obvious to the trial court; and that the error is harmful, that is, that absent the error there is a reasonable likelihood of a more favorable outcome for the defendant. As a matter of law, a trial court does not have the discretion to exceed the limits of the law. Doing so is, by definition, error. As a result, once an error is established, the trial court has exceeded the permitted range of discretion.

¶ 11 Under the plain error analysis, the error alone is not enough, as it might have been had the claim of error been preserved and presented on appeal in the normal fashion. Under plain error analytic dictates, the error must also have been obvious to the trial court. To show obviousness of the error, the defendant "must show that the law governing the error was clear at the time the alleged error was made." [2]

¶ 12 Finally, Beck must demonstrate that without the imposition of the obvious error, she had a reasonable likelihood of a more favorable result. This additional inquiry presents its own difficulties. We will address each element in turn.

# I. THE QUESTIONING BY THE TRIAL JUDGE WAS IN ERROR

¶ 13 The very essence of our judicial system is the right of every citizen to have his case heard by a neutral and impartial judge. Our constitutional system is designed to assure fairness to those who stand in jeopardy of life and property, even to the disadvantage of others. We hold the state, in its efforts to extract life, liberty, or property from those accused of crime, to a very high standard of proof. We insist that the process by which that guilt is proven also be of the very highest standards, including the meaningful participation of a neutral and impartial presiding officer, the judge.

¶ 14 As part of this process, we hold trial judges to high standards of conduct, both on and off the bench. In the vast majority of circumstances, that standard is not only met, but exceeded. It is a rare case indeed when judges anywhere in America act in intentional contravention of their oaths and legal duty. The error alleged in this case is not such an error. In the course of managing and participating in a trial, criminal or otherwise, it is perfectly correct for the trial judge to take an active role. It is his or her obligation to superintend the proceedings, and all of the elements that bring it about. Asking questions in the course of a trial, even of key witnesses or the defendant in a criminal matter, is often perfectly appropriate. It is only when that questioning strays into areas, or into a form, that may raise doubts about the neutrality of the court itself, that it becomes problematic.

¶ 15 The restrictions on active questioning by a trial judge are well established. They are based upon bedrock principles of constitutionally mandated fairness and the presumption of innocence afforded every defendant. The court must always be a fair and impartial venue committed to the purpose of seeking justice.[3] The trial judge must preside over a trial with dignity and impartiality.[4] In the course of a jury trial, a judge must not act or speak so as to indicate

---

2. *State v. Dean,* 2004 UT 63, ¶ 16, 95 P.3d 276.

3. *State v. Mellen,* 583 P.2d 46, 48 (Utah 1978).

4. *State v. Gleason,* 86 Utah 26, 40 P.2d 222, 227 (1935).

an opinion either on the credibility of evidence or on disputed issues of fact.[5]

▮▮▮ ¶ 16 Impartiality, both perceived and actual, is of particular importance in a criminal case before a jury. The judge has the primary duty to protect the accused's right to a fair trial. The judge is forbidden to express or otherwise indicate a view as to the guilt or innocence of the accused. That determination is for the jury exclusively, and is to be made without additional urging by the judge.[6]

▮▮▮ ¶ 17 The judge need not always sit upon the bench in stony silence.[7] It may often be necessary to intercede in the proceedings to direct the pace of the trial or to conduct housekeeping items. In appropriate circumstances, a judge has discretion to briefly question witnesses to elicit the truth and clarify facts.[8] Rule 614(b) of the Utah Rules of Evidence expressly provides that "[t]he court may interrogate witnesses, whether called by itself or by a party." However, as we have counseled in the past, "[t]he practice of questioning by a judge is not to be recommended or encouraged because even with the best of intentions a judge in all sincerity may carry his examination too far and unwittingly prejudice a defendant before the jury."[9]

▮▮▮ ¶ 18 In questioning a witness, the judge should not engage in extensive examination or usurp the function of counsel.[10] The judge must take particular care when the defendant takes the stand on his or her own behalf, as "any unnecessary comments by the court are too likely to have a detrimental effect on the jury's ability to decide the case impartially."[11]

¶ 19 These are not new guidelines. They are, and have been, the clearly established law for a long time. As such, violation of these restrictions is not only error in nearly every circumstance, but is also obvious, or should have been, to the trial judge.

▮▮▮ ¶ 20 In this case, the trial judge overstepped these bounds. The court of appeals correctly decided that the trial judge exceeded his permitted discretion in some of the questioning he engaged in, and thereby committed obvious error. As here, a judge commits error when, in a criminal case before a jury, he questions a defendant extensively about weak aspects of her defense. The trial court asked the defendant forty-eight questions. He questioned her on several aspects of her case, focusing on why she had not produced certain items of evidence, whether the high school principal had told her one of her letters was "incriminating," why she had not turned her computer over to investigators, and how she thought her fingerprints might have appeared on written correspondence she had denied authoring. The questions went well beyond what was "necessary or desirable to clarify, explain or add to the evidence as it relate[d] to the disputed issues."[12] They were prosecutorial in both substance and tone.

¶ 21 The error should have been obvious to the trial court in light of our decisions in *Gleason* and *Mellen*. The judge extensively examined the defendant and "usurp[ed] the function of counsel."[13] Although the judge may have sought to maintain an attitude of neutrality, his questions were such that the jury could have inferred, maybe unfairly or incorrectly, his opinion as to the credibility of the defendant and critical disputed issues of fact. This is not permitted.

## II. THE COURT OF APPEALS APPLIED THE CORRECT BURDEN

▮▮▮ ¶ 22 The third step in the plain error analysis followed by the court of appeals is to

5. *Mellen,* 583 P.2d at 48.

6. *See Gleason,* 40 P.2d at 227.

7. *Mellen,* 583 P.2d at 48 ("[T]he judge does have a function beyond sitting as a comparatively silent monitor of the proceedings.").

8. *Gleason,* 40 P.2d at 227.

9. *Id.* at 228.

10. *Id.* at 227.

11. *United States v. Middlebrooks,* 618 F.2d 273, 277 (5th Cir.1980).

12. *Mellen,* 583 P.2d at 48.

13. *Gleason,* 40 P.2d at 227.

evaluate whether or not the defendant has established that the obvious error was harmful. We have required that the defendant show that the error "is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." [14]

¶ 23 The State expresses the concern on certiorari that by the language employed in the opinion of the court of appeals, they have modified this burden to one of requiring the *State* to show that a better result would *not* have occurred, absent the error.[15] While such a reading is possible, in isolation, it is clear that the court of appeals applied the correct standard in its assessment of harmfulness of the error. The court twice stated the correct standard.[16] The court of appeals also clearly applied the correct standard when it analyzed the trial court's questioning, concluding that its confidence in the verdict had been undermined.[17] To the extent that the court of appeals' statement suggests that the State must prove certainty of the same outcome absent the judge's intervention, we disavow it as a standard for establishing plain error. The defendant still has the bur-

den to demonstrate a reasonable likelihood of a more favorable outcome.

## CONCLUSION

¶ 24 We conclude that the district court's questioning of the defendant exceeded the range of discretion permitted by the rules of evidence and case law. The trial court committed obvious error by engaging in extensive questioning of the defendant before the jury that cast doubt upon her credibility and compromised the judge's role as an impartial, neutral official. We also conclude that the court of appeals applied the correct standard in its assessment of prejudice. Affirmed.

¶ 25 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.

---

14. *State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993).

15. The State argues that the court of appeals created a new standard in finding prejudice when it stated that "we cannot say with certainty that the jury would have reached the same out-come absent the judge's intervention." *State v. Beck,* 2006 UT App 177, ¶ 13, 136 P.3d 1288.

16. *See id.* ¶¶ 9, 13.

17. *Id.* ¶ 13.