2015 UT App 283

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RUDY GOMEZ,
Appellant.

Per Curiam Decision
No. 20150045-CA
Filed November 27, 2015

Fifth District Court, St. George Department
The Honorable Eric A. Ludlow
No. 111501075

Gary G. Kuhlmann and Nicolas D. Turner, Attorneys
for Appellant

Sean D. Reyes and Ryan D. Tenney, Attorneys
for Appellee

Before JUDGES J. FREDERIC VOROS JR., STEPHEN L. ROTH, and
JOHN A. PEARCE.

PER CURIAM:

¶1    Rudy Gomez appeals his convictions for three counts of aggravated sexual abuse of a child, a first degree felony. We affirm.

¶2    Gomez's appellate counsel has filed a hybrid brief that argues a single issue under standard briefing procedures and two issues under the procedures of *Anders v. California*, 386 U.S. 738 (1967), as adopted by *State v. Clayton*, 639 P.2d 168 (Utah 1981). "An *Anders* brief is in one sense an abbreviated form of a regular brief, but it is different from a regular brief in that it must demonstrate that the potentially meritorious issues are frivolous." *Dunn v. Cook*, 791 P.2d 873, 877 (Utah 1990); *see also*

*State v. Wells*, 2000 UT App 304, ¶ 7, 13 P.3d 1056 (per curiam) (stating that an *Anders* brief must brief potential issues identified by either the defendant or counsel and objectively demonstrate that the issues presented are frivolous). The *Anders* portion of the brief argues that trial counsel was ineffective because (1) he was not adequately prepared because he did not meet frequently enough with Gomez and (2) he did not cross-examine the children's mother about whether she instructed the children to falsely accuse Gomez, even after she had denied that assertion in her direct testimony. The *Anders* portion of the brief procedurally complies with *Anders* and *Clayton* and "objectively demonstrate[s] that the issues [raised] are frivolous." *State v. Flores*, 855 P.2d 258, 260 (Utah Ct. App. 1993) (per curiam). Based upon our independent examination of the record and consistent with the *Anders* procedures, we determine that the two issues raised in the *Anders* portion of the brief are wholly frivolous, and we do not consider them further.

¶3     The issue raised by appellate counsel under standard briefing procedures is whether the district court judge plainly erred by asking the attorneys to clarify for him what one of the victims had said during her direct testimony, allegedly alerting the prosecutor to a defect in the State's case. In the alternative, Gomez claims his trial counsel was ineffective in failing to make a timely objection to the judge's question. The claim of error concerns only the incident involving the younger child that formed the basis for one of Gomez's three convictions. That incident was closely related to the incident from the same date involving the older child. Each child was present during the incident involving the other.

¶4     The older child testified that while the children were showering together, Gomez came into the bathroom, removed or lowered his pants and boxers, and sat on the closed toilet seat. The older child testified that Gomez pulled the children on top of him and that he had no pants or boxers on. Gomez placed the

older child on his lap facing away from him and pushed her up and down. She testified that her "butt was touching his penis." When he was done with the older child, he took the younger child out of the shower and told the older child to get back in the shower. The older child testified, "He'd pull her, and then when he was done with her, he'd pull me out." The older child did not remember how many times this happened. The older child did not see Gomez's penis, but she felt it. He moved her up and down on his penis. Her body and his body were touching. The older child saw him put the younger child on top of him, "then [she] turned around because [she] knew what he was going to do to her."

¶5   The younger child testified that while she was taking a shower with the older child, Gomez came in to sit on the toilet. She thought the lid was shut. He pulled his pants down. He called either her or the older child's name, but she did not recall whom he called first. He sat them on his lap, and he had his boxers and pants down. They were facing away from him. The younger child testified, "It was kind of like a jump on him that kept bouncing." He did that to her and to the older child. When asked if she felt anything, the younger child nodded her head yes. When asked if she knew what it was, she gave a "non-verbal response."

¶6   This concluded the younger child's direct testimony before the lunch recess. After the lunch recess, the younger child was back on the stand and the prosecutor asked questions "to clarify a few things." The younger child clarified that she was naked when Gomez took her out of the shower. She testified that she thought "it was his private that touched mine." He placed her on his lap and she was "kind of like bouncing on his lap." She was not facing him.

¶7   At the start of the next day of trial and while out of the presence of the jury, Gomez's counsel moved for a mistrial. Counsel stated that just before the lunch recess, the trial judge

stated that he "was not sure if [he] had heard testimony elicited from the younger child specific to which body parts touched which body parts." After the lunch break, the prosecutor continued the examination of the younger child and asked questions to clarify her testimony. Gomez's trial counsel claimed the inquiry prompted the prosecutor "to establish the elements of the offense." Gomez's counsel argued that the court must remain independent, and a mistrial should be granted because the trial court "may have assisted the prosecution in establishing the elements of at least one count." The district court denied a mistrial, stating that "the question was whether or not I missed any testimony," that the judge had a concern that "maybe the jury got the impression that the State was alleging that this was a rape of a child," and that the question was outside the presence of the jury with counsel for both parties present.

¶8    Gomez concedes that there was no timely objection to the trial judge's question. Therefore, the issue is raised under a plain error analysis and, alternatively, based upon a claim that trial counsel was ineffective in not making a timely objection.[1] On appeal, Gomez "asserts that the trial court should have remained impartial, and that assisting the prosecution—on or off the record, intentionally or otherwise—in establishing an element of an underlying offense is a violation of" his constitutional rights. Gomez asserts that the trial court's question allowed the State to "address the apparent lack of testimony concerning the element of which body parts touched [the younger child] in the shower incident."

¶9    Gomez argues that the principles stated in *State v. Beck*, 2007 UT 60, 165 P.3d 1225, support his claim of error. In *Beck*, the

---

1. Because we conclude that the trial court did not err and Gomez was not prejudiced, we need not consider this alternative ground for review.

Utah Supreme Court, under plain error review, considered whether a trial judge's questioning of the defendant in the presence of the jury exceeded the permitted range of discretion. *See id.* ¶ 7. "Under the plain error analysis, the error alone is not enough, as it might have been had the claim of error been preserved and presented on appeal in the normal fashion," rather "the error must also have been obvious to the trial court." *Id.* ¶ 11. A trial judge may take an active role in managing a trial, including questioning witnesses, and "[i]t is only when that questioning strays into areas, or into a form, that may raise doubts about the neutrality of the court itself, that it becomes problematic." *Id*. ¶ 14. "[A] judge has discretion to briefly question witnesses to elicit the truth and clarify facts." *Id.* ¶ 17; *see also State v. Mellen*, 583 P.2d 46, 48 (Utah 1978) ("[I]t is within [the trial judge's] prerogative to ask whatever questions of witnesses as in his judgment is necessary or desirable to clarify, explain, or add to the evidence as it relates to the disputed issues."). Because the questioning in *Beck* "went well beyond what was 'necessary or desirable to clarify, explain, or add to the evidence as it relate[d] to the disputed issues," *id.* ¶ 20, the supreme court held that the trial court committed obvious error "by engaging in extensive questioning of the defendant before the jury that cast doubt upon her credibility and compromised the judge's role as an impartial, neutral official," i*d.* ¶ 24. *Beck* does not support the claim presented in this case that the trial judge committed any error by seeking clarification of his own recollection of the younger child's testimony. The request was made outside the presence of the jury and was within the court's discretion.

¶10    The State also persuasively argues that there was no prejudice to Gomez from the judge's question because the evidence up to that point in the trial was sufficient to establish the disputed element of the offense for which Gomez was charged. The State was required to show that "the person touche[d] the anus, buttocks, or any part of the genitals of the

minor . . . with the intent to arouse or gratify the sexual desire of any person." Utah Code Ann. § 76-5-401.1(2) (LexisNexis Supp. 2014). There is no credible basis for a claim that the State had not established that Gomez touched the younger child's buttocks when he placed that naked child on his own naked lap. After the lunch break, the younger child clarified that her buttocks made contact with Gomez's "private." That clarification of the facts, even if it assisted the jury by more accurately describing the touching, did not supply a previously missing element. The claim that Gomez was prejudiced because the district court coached the prosecutor to cure a defect in the case lacks merit.

¶11    Accordingly, we affirm.

_____